# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00221-COA

**DRESHAWN SULLIVAN A/K/A DRESHAWN M. SULLIVAN**        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/19/2017 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY T. GERBER KAYLYN HAVRILLA McCLINTON JASON L. DAVIS |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/11/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT**:

¶1. Dreshawn Sullivan appeals his Forest County Circuit Court convictions of "breaking and entering" (i.e. burglary), attempted kidnapping, and felony child abuse. Having considered both his and his counsel's arguments, those of the State, and relevant case law, we affirm.

## FACTS

¶2.     In the early morning hours of March 16, 2016, sixteen-year-old R.L.[1] was brutally assaulted in her home by an unknown male who came in through her bedroom window. Initially, he told her not to talk and demanded that she leave with him. When she refused, he punched her in the face and hit her in the head with a metal object. She fell to the floor, bleeding and unconscious.

¶3.     On the evening of the incident, R.L.'s sister, J.L., brother, mother, stepfather and J.L.'s boyfriend, Jonathan Hogen, were in the home. J.L. and Hogen slept in J.L.'s bedroom. J.L. got up in the middle of the night to go to the bathroom and heard her sister moaning. J.L. found R.L. in her bedroom, bloodied and unconscious. J.L. woke her mother and stepfather, who, along with J.L., took R.L. to the hospital. Hogen left the home soon after they did and later testified that he went straight home.

¶4.     R.L. was severely injured. She underwent brain surgery and was in a medically induced coma for three weeks. Her surgeon testified that her skull fracture was so severe that her brain was literally protruding from her skull and exposed to the air. Because of brain swelling, he had to remove a portion of the bone that he later reconstructed. Remarkably, when she awoke, she remembered all of the events and could describe her assailant. After hospitalization in Hattiesburg, she went to Blair E. Batson Hospital in Jackson for a lengthy rehab period.

¶5.     For several weeks, the investigation stalled. The rape kit revealed no semen or sperm. Nothing materialized from physical items taken from the room and examined for trace DNA

---

[1] We use initials to protect the minors' identities.

evidence. Then police received a call from R.L.'s friend, Brianna Pruitt, who had obtained information on the case. She told them that her cousin, Alexia Jordan, had heard from Xiara Thompson that Dreshawn Sullivan was at a party saying that he was the person who had assaulted R.L. Police arranged a photo lineup with R.L. She identified Sullivan as her assailant.

¶6.    On June 5, 2015, Sullivan was arrested and charged with aggravated assault. Police detectives testified at trial that Sullivan waived his *Miranda* rights[2] and stated that he had been drinking on Dabbs Street the night of the incident. He also said that he walked home on a route that, according to detectives, took him close to R.L.'s home. When Sullivan said that he did not strike R.L. in the head with a hammer, the detectives pointed out that they had not revealed any of the details of the assault. Sullivan stopped talking and, according to investigators, then asked for a lawyer.

¶7.    Sullivan was ultimately indicted, and charged with breaking and entering, attempted kidnapping and felony child abuse. A jury trial was conducted during which prosecutors were allowed to present evidence of another charge against Sullivan involving a girl named K.L. and evidence of contacts he had with a girl named R.M.

¶8.    K.L., age fourteen, testified that during the early morning hours of May 18, 2015, she awoke when she felt herself being pulled out of her bedroom window. Her bed was directly

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966). Sullivan disputed this alleged waiver and said that when he was presented the *Miranda* waiver form, he immediately wrote that he wanted a lawyer. Although Sullivan claimed that he was psychologically intimidated and threatened into talking to the detectives, he also said that he had been dealing with law enforcement since he was sixteen. He admitted he deliberately lied to them about his address because he did not want them to know where he lived.

under the window and a man had opened it, reached down, and started lifting her up and out. She awoke and struggled. When she tried to scream, he forced a towel into her mouth, cutting her lip. He had her halfway out of the window when she broke free and ran down the hall where she met her mother. Although the man wore a mask, K.L. remembered his eyes.

¶9. A few days later, K.L.'s mother, Kizzy Thomas, encountered a man she thought was named "Mr. Hattiesburg"; his real name is Derrian Moye. Moye told Thomas that he was a friend of Sullivan's mother. Ultimately, he made veiled threats to Thomas about pursuing K.L.'s assault case. Thomas reported this incident to the police, who arrested and charged Moye with witness tampering.

¶10. Thomas learned from children in the neighborhood who recognized "Mr. Hattiesburg" that he hung out with someone named "Mad Five." From a cousin, she learned that "Mad Five" was Sullivan. Thomas found Mad Five's Facebook page and showed it to K.L. K.L. identified Sullivan as the man who tried to kidnap her. K.L. also testified that she had seen Sullivan on two prior occasions; once at her cousin's birthday party and another time just three days before her attack. During her second encounter, Sullivan walked by her home, saw her on her porch, and asked if he could come in. She especially recalled his eyes, "spooky" and staring at her, which enabled her to identify Sullivan as her attacker from his Facebook page and a police photo lineup.

¶11. R.M., yet another child in the area, had contacts with Sullivan on Facebook. He had communicated with her through his account styled "Mad Five Sullivan." At one point, he texted R.M. at 11 p.m. and asked her which window led to her bedroom. He asked to come

4

see her but she declined. He asked again about the location of her window. These texts and Facebook exchanges were entered into evidence. Sullivan did not deny his contacts with R.M. or K.L., but he denied that he tried to kidnap K.L.

¶12. Prior to trial, Sullivan challenged the admissibility of K.L.'s and R.M.'s testimonies through a motion in limine. After hearing argument, the trial court allowed their testimonies into evidence based upon the State's assertions that it was being offered to prove the identity of R.L.'s assailant, the common scheme that Sullivan used, and his intent. Sullivan also filed a motion in limine to exclude Pruitt's testimony that led to the photo lineup, which was granted. But Sullivan's counsel withdrew the objection during the trial.

¶13. At trial, Sullivan testified in his defense and denied assaulting R.L. On the night of the incident he said he was hanging out with his friends—other members of the Almighty Vice Lord Nation—drinking and selling crack until 3:30 a.m. He said he was walking home when he spotted Hogen, who gave him a ride. Hogen had testified earlier and denied this allegation. Sullivan admitted the Facebook exchanges with R.M. and said that he talked to K.L. one day while walking his dog. He also admitted to speaking to his "spiritual advisor" and "community leader," Moye, about the allegations. According to Sullivan, Moye said he would look into it.

¶14. The jury convicted Sullivan on all three counts. He was sentenced to twenty-five years for burglary, to thirty years for attempted kidnapping, and to life for felony child abuse. Sullivan appeals these convictions.

¶15. Sullivan's appointed appellate counsel raises three issues:

I. Whether the circuit court abused its discretion in admitting evidence of Sullivan's other bad acts.

II. Whether the circuit court erred in allowing hearsay testimony of Brianna Pruitt.

III. Whether there was sufficient evidence to sustain Sullivan's attempted kidnapping conviction or, in the alternative, whether the jury's verdict was against the overwhelming weight of the evidence.

Sullivan subsequently filed a pro se brief and raised additional issues that we have rephrased for clarity:

IV. Whether Sullivan's constitutional right to a speedy trial was violated.

V. Whether the weight of the evidence supported the jury's verdicts for burglary and child abuse.

VI. Whether the prosecutor erred by charging Sullivan with burglary of a dwelling, attempted kidnapping, and felony child abuse.

VII. Whether the trial court erred in admitting Sullivan's post-*Miranda* statement.

VIII. Whether the trial court erred by allowing Detective Smith to testify.

IX. Whether the trial court erred by refusing proposed jury instructions D-2 and D-8.

X. Whether the trial judge engaged in judicial misconduct.

XI. Whether the prosecutor engaged in prosecutorial misconduct.

XII. Whether Sullivan received ineffective assistance of counsel.

## DISCUSSION

**I. Whether the circuit court abused its discretion in admitting evidence of Sullivan's other bad acts.**

¶16. Sullivan challenges the admissibility of K.L.'s and R.M.'s testimonies as impermissible evidence of other bad acts. The appellate court reviews the admission of evidence under the

abuse-of-discretion standard and evidentiary rulings are affirmed unless they affect a substantial right of the complaining party. *Boggs v. State*, 188 So. 3d 515, 519 (¶9) (Miss. 2016).

¶17. Mississippi Rule of Evidence 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶18. Thus, evidence of other acts or crimes cannot be admitted to show that a defendant acted in conformity with his or her character. For example, in *Robinson v. State*, 35 So. 3d 501, 506-507 (¶16) (Miss. 2010), evidence that a defendant beat and threatened to kill a prior girlfriend was admitted in that defendant's trial for murdering his current girlfriend because it was entered merely to show the defendant's violent nature. The Mississippi Supreme Court found this to be reversible error. *Id*. at 507 (¶18).

¶19. However, evidence of other acts can be admissible if the prosecutor clearly articulates the alternative purpose for the evidence, and shows that a Rule 404(b) exception is met. *Strickland v. State*, 220 So. 3d 1027, 1033-34 (¶¶15-16) (Miss. Ct. App. 2016). The probative value of such evidence must not be substantially outweighed by the prejudicial effect. *Leedom v. State*, 796 So. 2d 1010, 1015 (¶15) (Miss. 2001); M.R.E. 403. If such evidence has been admitted under Rule 404(b), the trial court must give an instruction to the jury explaining the limited purposes for which that evidence may be considered. *Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008). There is no abuse of discretion if the circuit court considered

the evidence's admissibility under Rule 404(b) and then filtered it through Rule 403's balancing test. *Parks v. State*, 228 So. 3d 853, 869 (¶63) (Miss. Ct. App. 2017).

### A. Testimony of K.L and R.M.

¶20. Evidence of a different offense with a different victim may be considered by the jury if properly admitted under Rule 404(b), weighed against any prejudice to the defendant through Rule 403, and accompanied by an appropriately drafted limiting or cautionary instruction. *Green v.* State, 89 So. 3d 543, 549 (¶15) (Miss. 2012) (quoting *Derouen v. State,* 994 So. 2d at 756 (¶20)).

¶21. In *Gore v. State*, 37 So. 3d 1178 (Miss. 2010), the defendant was charged with molesting his granddaughter. The court allowed testimony from defendant's children that he molested them when they were minors. *Id*. at 1184 (¶14). The court reasoned that the defendant's means of accomplishing pedophilic sexual activities on past occasions bore substantial resemblance to each other and with the present offense, which served as proof of motive and a common plan or scheme. *Id*. at 1187 (¶20). The supreme court agreed, saying that the similarities between prior instances of misconduct and the charged offense undeniably brought the testimony of these other victims within the purview of admissibility under Rule 404(b). *Id; see also Green*, 89 So. 3d at 550 (¶17) (determining that the trial court did not abuse its discretion by allowing four females, who were all related to the defendant charged with gratification of lust with his minor stepdaughter, to testify that he had molested them when they were about the same age).

¶22. In *Boggs v. State*, 188 So. 3d 515 (Miss. 2016), testimony of other minors sexually

abused by the defendant was allowed to show a common plan or scheme and motive. The minors were all abused at about the same age; two were related to the defendant; he tutored the other. *Id*. at 521 (¶17). He used his relationship of trust as a family member and caretaker to be alone with them. *Id.* Two of the minors' testimonies concerning the defendant's conduct at the school library were substantially the same. *Id.* (¶18). The testimony was admissible to prove Boggs's motive. *Id.* Moreover, the supreme court found the probative value substantially outweighed the danger of unfair prejudice. *Id*. at 822 (¶19).

¶23. The case of *Fisher v. State*, 532 So. 2d 992 (Miss. 1988), is also applicable. In that case the victim while driving in her car was followed by the defendant who flashed his lights to get her to pull over. He told her she had a taillight out and when she got out of the car, he raped her. The victim definitely identified the rapist. But when news of the incident became public, another woman came forward and was allowed to testify that the same thing happened to her—that the same defendant had used the same ruse to get her to stop, which she did, but she was able to get away before the defendant could assault her. On appeal, the supreme court affirmed the admission of the second victim's testimony to show the defendant's "plan" for assaulting women. *Id*. at 1000 (¶12).

¶24. In *Parks v. State*, 228 So. 3d 853 (Miss. Ct. App. 2017), we found no error in the admission of prior similar assaults on other girlfriends to show Parks's motive, intent and modus operandi. There, two other women testified about the particulars of the physical assaults, which included sexual abuse and how Parks used a knife or other sharp object to threaten or harm his victims. *Id*. at 869 (¶61).

9

¶25.    In this case, the circuit court heard arguments of counsel and Sullivan himself on the admissibility of K.L.'s and R.M.'s testimonies.  The court determined that the evidence was relevant under Mississippi Rule of Evidence 401 because of the substantial similarity of the events.  The circuit court next acknowledged that the evidence would not be admissible to prove Sullivan's character under Rule 404(b) but that it was admissible to show a common plan or scheme and identity.  The court further found that after "considering the nature of the case, the act in this case, the acts in the other two incidents, I believe . . . the evidence is more probative than prejudicial and the probative value substantially outweighs the danger of unfair prejudice to Mr. Sullivan."  We agree.  Here, the prosecutor clearly presented the alternative purpose of K.L.'s and R.M.'s testimonies, which was to show Sullivan's plan or scheme.  As the prosecutor stated, Sullivan sees young girls, may try to talk to them, but ultimately goes after them through a window.  Their testimonies were also probative as to the identity of R.L.'s assailant.  We find that there was no error in the admission of the testimonies of K.L and R.M as they were entered for an alternative purpose under 404(b), and their probative value outweighed the prejudicial effect to Sullivan.  Moreover, the court properly gave the limiting instruction required under *Derouen*.[3]

B.      *Testimony of Moye's attempt to get Thomas to drop charges,*

---

[3] The limiting instruction (Jury Instruction No. 15) provided:

The acts testified to by K.L. and R.M. are acts relating to charges for which Dreshawn M. Sullivan is not presently on trial and are to be considered only for the limited purpose of showing proof of common scheme, plan, and identity.  You cannot and must not simply infer that the defendant acted in conformity with his subsequent acts and that is therefore guilty of the charges for which he is presently on trial.

*thus creating the inference that Sullivan was an accessory to witness tampering.*

¶26.   Prior to trial, Sullivan did not attempt to exclude evidence that Moye attempted to influence Thomas, K.L.'s mother,[4] or the fact that Moye was arrested and charged with witness tampering.  Now Sullivan argues that admission of this evidence implied that Sullivan was an accessory to Moye's crime "by his association" with Moye.  But the State never mentioned this testimony or its implications in closing, and no jury instruction concerning it was requested.  More importantly, at trial, Sullivan did not object when the investigating officer testified that after Thomas reported Moye's behavior Moye was arrested and charged with tampering with a witness.  The failure to object to testimony at trial waives any assignment of error on appeal.  *Ross v. State*, 16 So. 3d 47, 57 (¶21) (Miss. Ct. App. 2009).  Accordingly, we find that Sullivan is procedurally barred from raising this issue for the first time on appeal.

**II.      Whether the circuit court erred in allowing hearsay testimony of Brianna Pruitt.**

¶27.   Mark Hogen allegedly overheard Sullivan at a party saying that he (Sullivan) had assaulted R.L.  Mark told this to Xiara Thompson, who told Alexia Jordan, who told her cousin, Brianna Pruitt.  When she received this information, Pruitt went to the police.  Authorities later arranged the photo lineup during which R.L. identified Sullivan as her assailant.  Only Pruitt testified at trial.

¶28.   Hearsay is a statement, other than the one made by the declarant while testifying at the

---

[4] Moye did not testify and invoked his rights under the Fifth Amendment.

11

trial or hearing, offered in evidence to prove the truth of the matter asserted. M.R.E. 801(c). Hearsay is inadmissible "except as provided by law." M.R.E. 802. Double hearsay is even more complicated and is incompetent unless each link in the chain fits under some exception to the hearsay rule. *Murphy v. State*, 453 So. 2d 1290, 1294 (Miss. 1984). However, "reversal is required only where abuse of that discretion can be shown to cause prejudice to the defendant." *Franklin v. State*, 136 So. 3d 1021, 1028 (¶22) (Miss. 2014). "When determining whether a statement is prejudicial, th[e] Court has established an objective test asking how a reasonable objective observer would under the circumstances be likely to perceive the statement." *Id.* at 1029 (¶26) (internal quotation mark omitted).

¶29.     Even if evidence is admissible under an exception to the hearsay rule, the court must conduct an on-the-record balancing test pursuant to Rule 403 to establish that the probative value outweighs any prejudice to the defendant. *Jones v. State*, 920 So. 2d 465, 475 (¶32) (Miss. 2006). In this sense Rule 403 is the ultimate filter through which all otherwise admissible evidence must pass. *Id*. Consequently, this rule necessarily vests in the circuit court a certain amount of discretion. *Id.* (quoting *Hart v. State*, 637 So. 2d 1329, 1336 (Miss. 1994)).

¶30.     In a motion in limine prior to trial, Sullivan's defense counsel objected to Pruitt's hearsay testimony and the Court sustained the objection in a written order. However, at trial, when the State started questioning Pruitt and the hearsay arose, defense counsel initially objected to the testimony. He then withdrew the objection:

> A.     My cousin had got in contact with me, and she told me that she had some information, but she didn't want to tell me over the phone; so she

12

told me to meet up with her.

Q.      There's some tissue, ma'am, if you need it, in front of you, and when you say your cousin, who's your cousin?

A.      Alexia Jordan. So she told us to meet up at the beauty salon. We was at the beauty salon, and she told me that she heard about him getting drunk and saying what he had did like...

[DEFENSE COUNSEL]: Objection, Your Honor. It's hearsay and double hearsay.

THE COURT: All right, let me see the attorneys over here.

        (SIDEBAR)

MR. WALLACE: It's a miscommunication on our part. This is a Miscommunication.

. . . .

[STATE]: Are you withdrawing your objection?

[DEFENSE COUNSEL]: We're withdrawing the objection[.]

[STATE]: Will you say that?

THE COURT: Yea.

        (SIDEBAR CONCLUDED)

THE COURT: All right, so ask your question again.

[STATE]:  Yes, Your Honor.

Q.      Ms. Pruitt, tell the jury what your cousin, Alexia Jordan, talked to you about at the hair salon?

THE COURT: Is there an objection to this line of questioning?

[DEFENSE COUNSEL]: No, Your Honor.

13

THE COURT: All right, you may proceed.

A failure to make a contemporaneous objection waives an issue for appeal purposes. *Caston v. State*, 823 So. 2d 473, 502 (¶101) (Miss. 2002) (citing *Gatlin v. State*, 724 So. 2d 359, 369 (¶43) (Miss.1998)). Under these circumstances, where the defense withdraws its objection to hearsay, the circuit court did not have to undertake the Rule 403 balancing test and the circuit court made no error in allowing Pruitt's testimony.

¶31. Despite his counsel's actions, Sullivan urges this Court to find that the circuit court committed "plain error" when it allowed the State to elicit this testimony, claiming he was deprived of his right to cross examine other witnesses in the chain.[5] Under the "plain error" doctrine, we can recognize obvious error that was not properly raised but which affects a defendant's "fundamental substantive right." *Corbin v. State,* 74 So. 3d 333, 337 (¶11) (Miss. 2011). A violation of the Confrontation Clause is a violation of a "fundamental, substantive right." *Id*. (¶13). But we invoke the plain-error doctrine only when a violation "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Porter v. State*, 749 So. 2d 250, 261 (¶36) (Miss. Ct. App. 1999) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Plain-error review should only be used for "correcting obvious instances of injustice or misapplied law." *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008) (quoting *Newport v. Fact Concerts Inc.*, 453 U.S. 247, 256 (1981)). To determine if plain error has occurred, this Court must determine whether the trial court has deviated from a legal

---

[5] A party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, otherwise it is procedurally barred. *Swinney v. State*, 241 So. 3d 599, 620 (¶13) (Miss. 2018); *Williams v. State*, 794 So. 2d 181, 187 (¶23) (Miss. 2001).

14

rule; whether that error is plain, clear, or obvious; and whether that error has prejudiced the outcome of the trial. *Swinney v. State*, 241 So. 3d 599, 606 (¶15) (Miss. 2018).

¶32. Sullivan cites *Brooks v. State*, 903 So. 2d 691 (Miss. 2005), for support. There the trial court allowed a witness to testify that the defendant's mother had told her that the defendant had confessed to the crime. *Id*. at 697 (¶19). The mother had been interviewed by the police, and she denied making such statements. *Id*. at 697 (¶18). The supreme court found that the alleged statement did not constitute an excited utterance and did not meet any of the guarantees of trustworthiness required in Rule 803(24) of the Mississippi Rules of Evidence; thus, the supreme court concluded that the trial court had erred in allowing the testimony as evidence. *Id*. at 698 (¶24).

¶33. *Brooks* is not applicable to the case at hand because Pruitt's testimony was not presented to establish Sullivan's guilt but rather to explain the events that led to the photo lineup with R.L. While hearsay testimony obtained by an investigating officer is usually inadmissible, it is not in other circumstances where probable cause for the arrest is at issue. *Swindle v. State*, 502 So. 2d 652, 657-58 (Miss. 1987). In *Swinney*, 241 So. 3d at 610 (¶43), the supreme court held that a trial court did not abuse its discretion by allowing a police chief's testimony about what had been reported to him because it was offered to show why he acted the way he did in the course of the investigation. Similarly, Pruitt's testimony justified the actions authorities took during their investigation of the case.

¶34. Accordingly, we do not find any plain error in the trial court's admission of Pruitt's testimony because it was not offered for proof of Sullivan's guilt, but rather to establish the

basis for the police photo lineup presented to R.L. If others in the chain were called, then it could be inferred that the State was offering such testimony to prove Sullivan's guilt. But the State did not. It called only Pruitt who told police about Sullivan's possible involvement which led to the photo lineup. Because the State offered Pruitt's testimony to show why police did what they did—and because the defense counsel had not once, but twice withdrawn the objection to this testimony—we find no error in the admission of Pruitt's testimony.

> **III.    Whether there was sufficient evidence to sustain Sullivan's attempted kidnapping conviction or, in the alternative, whether the jury's verdict was against the overwhelming weight of the evidence.**

¶35.    The standard of review for challenges to the legal sufficiency of the evidence presented at trial is as follows: "all evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence." *Jerninghan v. State*, 910 So. 2d 748, 751 (¶6) (Miss. Ct. App. 2005). The supreme court has stated that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hoffman v. State*, 189 So. 3d 715, 720 (¶21) (Miss. Ct. App. 2016). Under this standard, "the State receives the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Hughes v. State*, 983 So. 2d 270, 276 (¶11) (Miss. 2008).

¶36.    Mississippi Code Annotated section 97-3-53 (Rev. 2011) defines kidnapping:

> Any person who, . . . shall forcibly seize and confine any other person, . . .or without lawful authority shall forcibly seize, inveigle or kidnap any vulnerable person as defined in Section 43-47-5 or any child under the age of sixteen (16) years. . . . , shall be imprisoned for life in the custody of the Department of

16

Corrections if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the custody of the Department of Corrections.

¶37. Mississippi Code Annotated section 97-1-7(1)(Rev. 2013) provides for the punishment of attempt:

Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no other specific provision is made by law for the punishment of the attempt, be punished by imprisonment and fine for a period and for an amount not greater than is prescribed for the actual commission of the offense so attempted. . . .

¶38. Courts interpret "attempt" to mean the intent to do something, and some actual effort to put the intent into effect. *Gibson v. State*, 660 So. 2d 1268, 1270 (Miss. 1995).

The act must be such as will apparently result, in the usual and natural course of events if not hindered by extraneous causes, in the commission of the crime itself, and an act apparently adapted to produce the intended result is sufficient to constitute the overt act essential to an attempt. *Id.* (citation omitted).

*Hunter v. State*, 196 So. 3d 998, 1001 (¶14) (Miss. Ct. App. 2015). The "gravamen" of the offense of an attempt to commit a crime is found in the statutory requirement that an overt act toward the crime be committed and the defendant be prevented from its consummation. *Carter v. State*, 932 So. 2d 850, 852-53 (¶6) (Miss. Ct. App. 2006).

¶39. Sullivan claims there was no evidence of attempted forced detention or attempted asportation of R.L., so as to constitute attempted kidnapping. The State counters that evidence of Sullivan's attempt to forcibly seize and confine R.L. coupled with his demand that she come with him while he was holding a sharp metal object was sufficient evidence.

¶40. In *Hersick v. State*, 904 So. 2d 116, 127 (¶45) (Miss. 2004), the supreme court found

17

that where a defendant grabbed a girl in a parking lot and pulled her about five to ten feet before she was able to get away, there was sufficient evidence to support an attempted kidnapping conviction. Likewise, in *Carter v. State*, 932 So. 2d 850, 854 (¶¶12-13) (Miss. Ct. App. 2006), evidence was sufficient to support an attempted kidnapping conviction where the defendant made lewd sexual remarks to his victim, then parked his car, chased her down the street and grabbed her arm before she was able to get away. In *Brewer v. State*, 459 So. 2d 293, 294 (Miss. 1984), the victim picked Brewer up as a hitchhiker. Brewer then held a gun on the victim and forced him to drive further than he had intended before assaulting him. *Id*. at 295. The supreme court said that forcing a person to act under gunpoint constituted "forcible seizure" and being required to drive away from his destination constituted "confinement against his will." *Id*. at 296. These facts, the Court said, constituted kidnapping. *Id*. at 297. In *Salter v. State*, 876 So. 2d 412, 415 (¶¶18-19) (Miss. Ct. App. 2003), this Court upheld the conviction of kidnapping of a defendant who moved all bank employees into the vault. In this case, while R.L.'s assailant was not successful in taking her from her home, clearly he attempted to do so.

¶41.    Sullivan cites for support *Cuevas v. State*, 338 So. 2d 1236, 1237 (Miss. 1976), where an escaped prisoner ended up in a store, moved an employee from the entrance to the parts department, and held him there for two hours before surrendering. The supreme court pointed out that it examines whether the confinement is merely incidental to a lesser crime or a constituent part of a greater crime, *id*. at 1238—a principle that Sullivan argues is applicable here. Sullivan claims that any confinement here was incidental to the alleged burglary and

18

was not an overt act to accomplish a separate crime of kidnapping. But *Cuevas* does not help

Sullivan. In upholding Cuevas's kidnapping conviction, the Court said:

> If forcible detention or movement is merely incidental to a lesser crime than kidnapping, such confinement or movement is insufficient to be molded into the greater crime of kidnapping. An illustration might well be a strong-armed robbery where the victim is detained and perhaps moved a few feet while being relieved of his wallet. The detention and movement would not support kidnapping albeit with force and unlawful. On the other hand, if the confinement or asportation be not merely incidental to a lesser crime, but a constituent part of the greater crime, the fact of confinement or asportation is sufficient to support kidnapping without regard to distance moved or time of confinement.

> Cuevas's purpose in seizing and detaining Hardin was obviously to make good his escape. The detention was not merely incidental to another and lesser crime. It was a necessary constituent of the crime. The confinement and movement of Hardin by force from the service entrance of the building to the parts department of the building was sufficiently proved to support Cuevas's conviction. *See People v. Adams*, 205 N.W.2d 415 (Mich. 1973), for a well-reasoned case persuasive to the above point of view.

*Cuevas*, 338 So. 2d at 1238-39.

¶42.   Just as the Court in *Cuevas* found that Cuevas's detention of Hardin was not incidental

to the crime of escape but rather constituted the crime of kidnapping, here too Sullivan

entered R.L.'s bedroom (overt act #1); grabbed her (overt act #2); demanded she leave with

him (overt act #3); then struck her when she refused (overt act #4). Moreover, after knocking

R.L. unconscious, Sullivan stole no items from the room. Sullivan's actions toward R.L. were

not incidental to another crime but necessarily constitutes the crime of kidnapping. After

viewing all the evidence in the light most favorable to the prosecution, we hold that any

rational trier of fact could have found the essential elements of the crime of attempted

kidnapping beyond a reasonable doubt. Thus the verdict on the attempted kidnapping count

19

was not contrary to the weight of the evidence.

## SULLIVAN'S PRO SE ISSUES

¶43. The State argues that Sullivan should be precluded from raising additional issues pro se because he did not comply with the Mississippi Rules of Appellate Procedure. It notes that Sullivan ostensibly raises four additional issues but that he neglected to point out that each issue has unidentified sub-issues. The State claims that Sullivan violated Mississippi Rule of Appellate Procedure 28(a)(3), which requires that each issue be separately numbered. But just because a brief is "inartfully drafted" does not mean we cannot review the merits when a pro se appellant substantially complies with Rule 28(a)(7), which requires that the argument contain an appellant's contentions, and the reasons for those contentions along with cited authorities. This was our concern in *Hill v. State*, 215 So. 3d 518 (Miss. Ct. App. 2017), where we found Hill's pro se brief, a disorganized series of cursory and repetitive assertions with few citations, did not comply with Rule 28(a)(7). *Id*. at 524 (¶10); *see also* M.R.A.P. 2(c). Unlike *Hill*, here Sullivan did attempt to comply by providing references to the record and citing some authority. Therefore, we do not find that he is procedurally barred from raising his additional issues for consideration.

IV. **Whether Sullivan's constitutional right to a speedy trial was violated.**

¶44. This Court will uphold a trial court's ruling on a speedy-trial claim if it is based on substantial, credible evidence of good cause for the delay. *Perry v. State*, 233 So. 3d 750, 756 (¶9) (Miss. 2017). We will reverse if no probative evidence supports the trial court's good-cause finding. *Id*.

¶45.    Both the Federal and State Constitutions guarantee a defendant the right to a speedy trial. *Stark v. State*, 911 So. 2d 447, 449 (¶6) (Miss. 2005). In *Barker v. Wingo*, 470 U.S. 514 (1972), the United States Supreme Court developed a balancing test to determine whether a defendant's constitutional right had been violated. The Court considers the length of the delay, the reason for the delay, a defendant's assertion of his right, and prejudice to the defendant. *Barker*, 407 U.S. at 530-32. Concerning prejudice to the defendant, the court seeks to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility that the defense will be impaired. *Id.* at 532. The *Barker* analysis is triggered when there is a presumptively prejudicial delay. *Id*. at 530. Our supreme court has held that any delay exceeding eight months is presumptively prejudicial. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989). The calculation of the time elapsed begins with the defendant's arrest, indictment, or information. *Id*. at 408. "In short the constitutional right to a speedy trial attaches when a person has been accused." *Hersick*, 904 So. 2d at 121 (¶5) (citing *Smith*, 550 So. 2d at 408). Once a delay is found to be presumptively prejudicial, the court must determine whether the delay should be charged to the State or the defendant. The burden of proof shifts to the State to show the good cause for any delay attributed to it. *Stark*, 911 So. at 450 (¶6).

¶46.    The crime in this case was committed on March 16, 2015, and Sullivan was arrested on June 9, 2015. Sullivan was indicted on February 15, 2017. He was arraigned on April 4, 2017, and offered a trial date during the May term. Sullivan's defense attorney had just received the case and needed more time to prepare. The case was then set for trial on

September 12, 2017, with no objection from Sullivan. On July 10, 2017, Sullivan filed a motion for speedy trial. He said that his right to a speedy trial had been violated and he requested that the court "enter an order granting him a speedy trial." However at that point a trial date had already been set with Sullivan's consent.

¶47. The circuit court ruled on the motion for speedy trial on August 31, 2017. It noted the length of the delay in this case: 826 days (in excess of two years) from the date of arrest to the date of trial. Because Sullivan was "accused" on June 9, 2015, and not tried until September 12, 2017, the circuit court examined the record under the *Barker* factors and concluded that Sullivan's constitutional right to a speedy trial was not violated. We agree.

¶48. While 865 days from alleged commission of a crime to trial is a presumptively prejudicial delay, the circuit court correctly examined the reasons for the delay, balanced their cause between the parties, and properly found no constitutional violation. The circuit court noted that there were several reasons for the delay: the severity of the injury to the victim and her hospitalization and rehabilitation time, Sullivan's incarceration related to a revocation hearing in Harrison County, the court's own difficulty in moving his docket due to shortages in the detective department of the City of Hattiesburg, and the time it takes to get reports from the crime lab. These were legitimate reasons for the delay in presenting the case to the grand jury. The circuit court found that the fact that Sullivan did not assert his right to a speedy trial until July of 2018 weighed slightly against him because he had declined an earlier trial date and because the next possible date had been set. The court also dealt with the prejudice to Sullivan, saying that from the time of the crime to the time of trial, much of Sullivan's

incarceration stemmed from the revocation of his parole on his felony stolen property charge and from another case where he was charged as an accessory after the fact to aggravated assault. So Sullivan was not oppressively incarcerated due to the charge involving R.L. Regarding the second interest dealing with prejudice, that of minimizing Sullivan's anxiety and concern, the court found no facts supporting or opposing a finding of prejudice due to anxiety. Finally, with respect to prejudice to Sullivan because the preparation of his case would be impaired, the court found no evidence in the record to support this. There was no claim that a potential witness had disappeared.[6] The only exception, the court said, might be that the video of Sullivan's confession was lost or destroyed. However, this was disputed by the State which said the confession was never recorded. Thus, the circuit court correctly found that the delay in the proceedings had not impaired Sullivan's defense and concluded that his constitutional rights had not been violated.

¶49. In addition to his constitutional right, Sullivan has a statutory right to a speedy trial found at Mississippi Code Annotated section 99-17-1 (Rev. 2015):

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

Sullivan's statutory right began when he was arraigned on April 4, 2017. He was tried on September 12, 2017—161 days later. So there was no violation of Sullivan's statutory right to a speedy trial.

### V. Whether the weight of the evidence supported the jury's verdicts for

---

[6] On appeal, Sullivan claims one of his witnesses had moved, but he does not identify this witness or explain what his or her testimony would have been.

**burglary and felony child abuse.**

¶50. In considering whether a verdict is contrary to the overwhelming weight of the evidence, this Court reviews the evidence in the light most favorable to the verdict to determine whether the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would amount to an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). The Court must accept the evidence supporting the verdict as true. *Gillett v. State*, 56 So.3d 469, 504 (¶100) (Miss. 2010). The challenge in this case succeeds only if a review of the evidence in the light most favorable to the verdict reveals that no rational juror could have found that the State proved each element of the crime charged beyond a reasonable doubt. *Livingston v. State*, 943 So. 2d 66, 72 (¶18)(Miss. Ct. App. 2006).

        *A.     Burglary*

¶51. Count I of Sullivan's indictment alleges that Sullivan:

> in Forrest County, Mississippi, on or about March 16, 2015, did unlawfully, willfully, feloniously, and burglariously break and enter the dwelling house of [R.L.'s mother] . . . with the intent to commit a crime therein: assault, contrary to the form of the statute. . . .

The statute Mississippi Code Annotated section 97-17-23 (Rev. 2014) provides:

> (1) Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

> (2) Every person who shall be convicted of violating subsection (1) under circumstances likely to terrorize any person who is actually occupying the house at the time of the criminal invasion of the premises shall be punished by imprisonment in the custody of the Department of Corrections for not less than

24

ten (10) years nor more than twenty-five (25) years.

¶52. The elements of burglary are breaking and entering of a building with the intent to commit a crime after entering. *Baker v. State*, 259 So. 3d 1281, 1287 (¶25) (Miss. Ct. App. 2018). Any effort, however slight, such as turning of a doorknob to enter, constitutes a "breaking" for purposes of burglary. *Templeton v. State*, 725 So. 2d 764, 766 (¶5) (Miss. 1998).

¶53. Here, Sullivan was identified by R.L. as the person who entered her home unlawfully through her window and who ultimately assaulted her. R.L. identified him at trial and previously through a photo lineup. Further proof that the intruder was most likely Sullivan came through testimony that Sullivan had approached two other young girls inquiring about coming through their windows. There was also evidence that he had attempted to kidnap one of them in a similar fashion. Finding that a rational juror could find Sullivan guilty of burglary beyond a reasonable doubt, we find sufficient evidence was presented on this count.

### B. Felony Child Abuse

¶54. Count III of the indictment alleged that Sullivan:

> in Forrest County, Mississippi, on or about March 16, 2015, did unlawfully and intentionally, knowingly or recklessly strike R.L. in the head causing serious bodily harm to R.L., a child who was sixteen (16) years of act at the time in question, contrary to the form of the statute . . . .

¶55. The felony child abuse statute, found at Mississippi Code Annotated section 97-5-39 (Rev. 2013) is lengthy. The sections relevant to this case include:

> (1)(b) For the purpose of this section, a child is a person who has not reached his eighteenth birthday. . .

(2) Any person shall be guilty of felonious child abuse in the following circumstances:

    (a) Whether bodily harm results or not, if the person shall intentionally, knowingly or recklessly: . . .

        (vi) Use any type of deadly weapon upon any child; . . .

    (c) If serious bodily harm to any child actually occurs, and if the person shall intentionally, knowingly or recklessly:

        (i) Strike any child on the face or head; . . .

    (e) For the purposes of this subsection (2), "bodily harm" means any bodily injury to a child and includes, but is not limited to, bruising, bleeding, lacerations, soft tissue swelling, and external or internal swelling of any body organ. . . .

¶56. To prove felony child abuse, the State must prove that Sullivan knowingly or intentionally struck R.L., a child, in the head and caused her serious bodily injury. *See Lenard v. State*, 51 So. 3d 239, 247 (¶¶27-28) (Miss. Ct. App. 2011) (felony child abuse does not constitute strict liability; the State must prove the acts or omissions were negligent or intentional). There is no dispute that R.L. was a child as defined in the statute.

¶57. Sullivan's identity as the person who struck R.L. was established by R.L.'s own testimony at trial and her previous identification of him during the photographic lineup. By her account, when R. L. refused to go with him, Sullivan intentionally struck her in the head. The record reflects that it was no accident or inadvertent, unintended result of some other act on Sullivan's part.

¶58. "Serious bodily harm" means "bodily injury [that] creates a substantial risk of death, or permanent or temporary disfigurement, or impairment of any function of any bodily organ or function." *Buffington v. State*, 824 So. 2d 576, 580 (¶15) (Miss. 2002). Proof of R.L.'s

serious bodily injury included her medical records and testimony from Dr. Daryl Johnson, a neurosurgeon, who treated her when she arrived at the hospital. He found she had significant brain trauma to the skull, including a commuted skull fracture to the left side which required immediate surgery. The fracture was so severe that he said one could see her brain coming out of her skull to the exposed air. Because of brain swelling, he had to remove a portion of the bone that he later reconstructed. Dr. Johnson opined that the injury was not consistent with a fall, but rather with R.L.'s being struck with a small hammer, pipe or bat with great force. He also explained that the capacity for memory is located in the middle of the brain, which was not injured in R.L.'s case. Thus, Dr. Johnson confirmed that it was possible for R.L. to recall the incident and have nightmares about it.

¶59. The fact that no weapon or DNA was found at the scene does not mean the proof was insufficient. From what was presented to the jury, we find that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements of the crime of felony child abuse beyond a reasonable doubt.

### VI. Whether the prosecutor erred by charging Sullivan with burglary of a dwelling, attempted kidnapping and felony child abuse.

¶60. Sullivan charges the prosecutor with unprofessional conduct when she "chunked up" his charges from aggravated assault to felony child abuse, breaking and entering and attempted kidnapping. Sullivan says this was done to intimidate him. The State argues that this alleged error was never raised to the circuit court. After an examination of the record and Sullivan's post trial motion for judgment notwithstanding the verdict, we agree that this issue was not presented to the circuit court. It is well established law that this Court will not

27

consider issues that were not raised in the trial court. *Warren v. State*, 456 So. 2d 735, 738 (Miss. 1984). "A trial judge cannot be put in error on a matter [that] was not presented to him for decision." *Crenshaw v. State*, 520 So. 2d 131, 134 (Miss. 1988). Accordingly, we do not need to address this issue. However, we do want to point out that it is a fundamental principle of our criminal justice system that a prosecutor is afforded prosecutorial discretion over what charge to bring in any criminal trial. *Watts v. State*, 717 So. 2d 314, 320 (Miss. 1998).

**VII. Whether the trial court erred in admitting Sullivan's *post-Miranda* statement.**

¶61. Sullivan next raises the alleged loss or destruction of a video or audio tape of his police interrogation and claims that without it he was deprived of his right to contradict law enforcement's testimony that he stated to them, "I didn't hit nobody with no hammer." He claims that, without this tape, the circuit court erred in allowing that statement into evidence.

¶62. Sullivan's signed waiver of his *Miranda*[7] rights was entered into evidence without objection during the testimony of Branden McLemore, who was in charge of criminal investigations for the Hattiesburg Police Department. He participated in Sullivan's interrogation on June 12, 2015. McLemore testified, as did Laron Smith, the other police investigator, that at first Sullivan asked for a lawyer and when Smith stood to leave to get him one, Sullivan changed his mind and signed the *Miranda* waiver form. The court found that his waiver was knowingly, intelligently, and voluntarily given. During the questioning that ensued, McLemore testified that Sullivan voluntarily stated, "Look, I did not strike the girl with a hammer in the head." McLemore also testified that up to that point in the investigation,

---

[7] *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966)

no weapon had been identified and it was Sullivan who first mentioned it. When confronted with this, Sullivan stopped talking.

¶63. McLemore also testified that the interrogation rooms were equipped with DVR recorders that were supposed to record the questioning. After the session, the normal practice is to burn a disk from the recorder. In this instance, however, McLemore testified, the recorder was not working and had not recorded the session. So, according to law enforcement, no recording of the interrogation ever existed. However, this does not make statements made by Sullivan inadmissible. *Williams v. State*, 522 So. 2d 201, 208 (Miss. 1988) (the mere absence of a tape recording does not make statements made during custodial interrogation inadmissible).

¶64. Sullivan also claims that he requested an attorney prior to signing the *Miranda* waiver and that he was not afforded one, so any statements he made should have been suppressed. However, the record reflects that he made no pre-trial motion to exclude his statements, nor did he object at trial when Smith and McLemore testified to what he said. Instead, the record shows that he chose to take the stand and rebut their statements by saying he was psychologically intimidated and threatened into talking to them. Sullivan testified that he told them he did not want to talk and they told him "okay," but he was being charged with attempted kidnapping and rape. At that point, Sullivan asked them what they knew and he voluntarily started talking to them. He also signed the *Miranda* waiver. Despite Sullivan's argument, he failed to raise an objection at trial to McLemore and Smith's testimonies nor did he raise the alleged *Miranda* violation in his post-trial motion.

¶65.   Sullivan's statements to Smith and McLemore are an exception to the hearsay rule under Mississippi Rule of Evidence 801(d)(2)(A) as an opposing party's statement against interest.  An out-of-court statement made by a party and offered against that party is not hearsay. Thus, statements made by a defendant to a witness are admissible when offered by the State against the criminal defendant, because they are not hearsay.  *Jackson v. State*, 245 So. 3d 433, 442 (¶52) (Miss. 2018).

¶66.   In summary, we find no error by the circuit court on the issue of Sullivan's statements or the non-existent tape of his confession.

### VIII.   Whether the trial court erred by allowing Detective Smith to testify.

¶67.   Sullivan claims the circuit court erred by allowing former detective Sergeant Laron Smith to testify.  Other than repeatedly saying that Smith lied, the only basis Sullivan gives for Smith's exclusion was that charges were allegedly pending against Smith for "hiding and tampering with evidence in the Tracy Hayes investigation."  Sullivan also claims that Smith changed dates on the forms documenting R.L.'s photo lineup and on Sullivan's *Miranda* waiver.[8]

¶68.   At trial, Sullivan's attorney began to cross-examine Smith about the reason Smith left the Hattiesburg Police Department.  Smith testified that he left for a position where he could use his psychology degree.  Sullivan's attorney then asked if there were any pending investigations about misconduct on his part, to which the State objected.  During a bench conference, it was clear that the defense had no proof of any pending investigation and the

---

[8] Sullivan offered no proof of this.

court basically sustained the objection and told the defense that at the end of his testimony, the court would excuse the jury and allow the defense to make a proffer. Cross-examination continued as well as redirect. When it came time to make a proffer, the defense declined and said he would "leave it alone."

¶69. When a trial court prevents the introduction of certain evidence, it is incumbent on the offering party to make a proffer of the potential testimony of the witness, or the point is waived for appellate review. *Turner v. State*, 732 So. 2d 937, 951 (¶55) (Miss. 1999); *Redhead v. Entergy Miss. Inc.*, 828 So. 2d 801, 808 (¶20) (Miss. Ct. App. 2002). We have underscored the need for a proffer:

> Generally, when a party seeks to offer evidence which in turn is excluded by the trial court, before we will consider the matter on appeal the party must have somehow placed in the record the nature and substance of the proffered evidence for our consideration. When testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal.

*Harrell v. State*, 179 So. 3d 16, 21 (¶15) (Miss. Ct. App. 2014).

¶70. Without the proffer of what Smith would have said concerning any investigation of misconduct while employed by the Hattiesburg Police Department, it is impossible for this Court to find error in the trial court's ruling.

### IX.     Whether the trial court erred by refusing proposed jury instructions D-2 and D-8.

¶71. The standard of our review for the grant or denial of jury instructions is well established. When reviewing a denial of a jury instruction, an appellate court must consider not only the denied instruction but also all of the instructions which were given to ascertain

if error lies in the refusal to give the requested instruction. *Ousley v. State*, 984 So. 2d 996, 1000 (¶15) (Miss. Ct. App. 2007). "Whether to grant or deny proposed jury instructions is within the sole discretion of the [trial] court." Victory v. State, 83 So. 3d 370, 373 (¶12) (Miss. 2012) (citing *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)). Thus, the grant or denial of jury instructions is reviewed under an abuse-of-discretion standard. *Id.* The supreme court has held that a trial court "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Ladnier v. State*, 878 So. 2d 926, 931 (¶20) (Miss. 2004).

### A.     *Proposed Instruction D-2*

¶72.    Sullivan claims that the circuit court erred in refusing the proposed instructions D-2 and D-8.  Proposed Instruction D-2 reads:

> The Court hereby instructs the jury that the testimony of a law enforcement officer should be considered by you just as any other evidence in this case.  In evaluating his or her credibility, you should use the same guidelines which you apply to the testimony of any witness.

The circuit court said that this jury instruction singled out the testimony of law enforcement witnesses and asked defense counsel for any case that would support the instruction.  Counsel replied that he did not have any.  The court went on to say that it was going to refuse the instruction because it was covered in other jury instructions and because it singled out a particular group of witnesses over another.  The court was correct.  In Jury Instruction 3, jurors were told that they had the duty to determine the believability of witnesses and weigh the various factors which may affect that witness's credibility.

¶73.    In *Austin v. State*, 784 So. 2d 186, 192 (¶19) (Miss. 2001), the defendant requested this

very same instruction, which the trial court refused for the same reason as did the court here. In the *Austin* appeal, the supreme court pointed out that it had previously upheld the refusal of such an instruction in numerous cases, and did so again. *Id*. at 193 (¶20). Accordingly, we find no error in the circuit court's refusal of proposed instruction D-2.

### B. Proposed Instruction D-8

¶74. Proposed instruction D-8 reads:

> The Court instructs the jury that if you believe from the evidence that there may be some other person who committed the crime of which the defendant is charged, and the name of that person has not been disclosed by the evidence, it is not required of the defendant to show the name of such person.

The circuit court said that it was not required to give an instruction that was not a proper statement of the law and not supported by the evidence. It asked defense counsel for a case that would support this instruction. Defense counsel responded that he did not have one, but argued that the instruction was a way of explaining the concept of reasonable doubt that applies in the law. The court also asked for any evidence in the record that anyone other than Sullivan committed the crime. The defense replied that investigator Smith had testified that there were other suspects who were eliminated. To the contrary, the record shows that Smith testified that when he got the case, they had no suspects, saying:

Q.   At that point in the investigation, so all of March, all of April, all of May, did y'all have any suspect that was a clear suspect to go forward on?

A.   No, ma'am.

Q.   So would you characterize the case as kind of going cold at that point?

A.   Yes, ma'am.

33

Only after Pruitt gave authorities the tip about Sullivan, did they have a suspect.

> Q.     And was this the first time that you had a name, as a possible suspect to put in the lineup?
>
> A.     Yes, ma'am.

¶75.    A defendant has a right to jury instructions supporting his or her theory of the defense, *Brown v. State*, 39 So. 3d 890, 899 (¶34) (Miss. 2010).  But the circuit court may refuse an instruction that is not supported by the evidence.  *Id*. at 898 (¶27).  *See also Leagea v. State*, 138 So. 3d 184, 187 (¶9) (Miss. Ct. App. 2013).  Here there was no testimony or evidence that anyone other than Sullivan may have committed this crime, and the circuit court did not err in refusing proposed instruction D-8.

### X.     Whether the trial judge engaged in judicial misconduct.

¶76.    Sullivan seeks reversal of his conviction based on what he describes as judicial misconduct.  Sullivan was convicted on September 15, 2017; he filed his motion for judgment notwithstanding the verdict on September 21, 2017.  In that motion, Sullivan raised no complaint of judicial misconduct before or during his trial.  At no time did Sullivan ask the judge to recuse himself.  If no contemporaneous objection is made, the error, if any, is waived. *Rubenstein v. State*, 941 So. 2d 735, 749 (¶27) (Miss. 2006).  The bulk of Sullivan's briefing on this issue consists of generalized or unfounded accusations;  he argues, for example, that the judge "failed to uphold the integrity and independence of the judicial system"; or "the judge couldn't even conceal the fact he was leaning 280 degrees toward the prosecution." Sifting through these, we address those with more specificity.

¶77.    Sullivan notes the judge's remarks during a time in the proceedings when it appeared

that Sullivan was staring at the victim, which unsettled her. The judge stopped the proceedings and Sullivan's testimony in an attempt to diffuse a tense situation. The judge told Sullivan, who was on the stand at the time, to "shut up" while he addressed counsel. This comment was made outside of the jury's presence. Therefore, it could not have prejudiced the jury's verdict. *Cavett v. State*, 717 So. 2d. 722, 725 (¶¶12-13) (Miss. 1998). Nor did the judge's instruction to Sullivan that he not look at the victim deprive Sullivan of his right to confront his accuser. His counsel had every opportunity to cross-examine R.L. on Sullivan's behalf and did. Thus, his right to confrontation was never violated. *Scott v. State*, 231 So. 3d 1024, 1046 (¶100) (Miss. Ct. App. 2016).

¶78.    In other instances, Sullivan failed to make a record of his complaints, such as "improper facial expressions and gestures" or the judge's "menacing glare, offensive body language, and comments." Without an objection and a record made on what the facial expression, gestures, or body language were, it is impossible for this Court to find error. *Howard v. State*, 853 So. 2d 781, 797 (¶49) (Miss. 2003).

¶79.    Sullivan claims that the judge called him "vulgar, disrespectful, and obscene names in front of the whole court." We find no evidence of this. In fact, a review of the record shows no personal comments made by the judge during the trial in front of the jury. At sentencing, the judge heard from Sullivan and his counsel. At that time, the judge did make some personal remarks before sentencing Sullivan. These included how a jury of his peers had found Sullivan guilty despite the fact that Sullivan had every opportunity to tell his side of the story. The judge went on then to point out the evidence in the record that showed how

Sullivan went into R.L.'s room that night and took away her innocence and security, and he went on to describe the evidence of the injuries to the child and the impact on her. He said that as a parent and grandparent, he hoped the child could get her life back. The judge further said:

> I've heard every motion you argued. I patiently listened. I tried to make the right decision on every ruling I made. I listened to every witness [who] testified in this trial. I listened to you, and my conclusion is, unlike your lawyer, I think you are a predator, and I think you prey on kids, and that's what they are, that are under the age of 16 years, and I think you're dangerous . . . , and since a jury of your peers has found you guilty beyond a reasonable doubt of these three crimes, I'm going to make it absolutely -- I'm going to do everything I can to make sure that you never hurt another child for the rest of your life. . . .

¶80. Sullivan did not object to these comments or raise any claims of bias or prejudice by the court, so such issues are technically not before us. But in a case where a defendant did object, *Green v. State*, 631 So. 2d 167 (Miss.1994), the supreme court did address the issue of judicial comments. In *Green*, the appellant objected to the following statements made by the judge during sentencing:

> It was a senseless killing, a useless killing. Just—I see dozens of them a year that are committed by people who will poke a handgun in their pocket and walk out on the street knowing they're going to kill somebody or they wouldn't put it in there. You didn't have that gun on for protection and you didn't have that gun on headed for a pawn shop. The man that you said was going to pawn that gun testified from the witness chair that you had not made any appointment with him that day or any other time to pawn that weapon. It was a senseless, useless, reckless killing.

*Id.* at 178. The supreme court noted that these comments about Green did not express any pre-judgment of Green's case by the court. *Id*. at 177. Instead, the comments reflected the judge's conclusions drawn from the evidence presented in the case. *Id*. at 178. Similarly, in

*Steed v. State*, 752 So. 2d 1056, 1062 (¶16) (Miss. Ct. App. 1999), we found no error when at sentencing the trial judge called Steed "a crook and a thief" because this is what the evidence showed. We said "a reasonable person, knowing all of the circumstances, would not doubt the judge's impartiality in this case." *Id.*

¶81. Looking at the record in this case, this Court finds no evidence that the circuit court showed bias or pre-judgment intent; rather, we find that the court that heard all arguments—both from Sullivan's attorney and from Sullivan himself—with respect and restraint. Any comments the court made at sentencing were based on evidence presented in the case.

¶82. It must further be noted that no prejudice can be found in the actual sentence imposed on Sullivan in this matter since it was within the statutory sentencing guidelines imposed by law. So long as the sentence imposed is within the statutory limits, sentencing is generally a matter of trial court discretion. *Wallace v. State*, 607 So. 2d 1184, 1188 (Miss. 1992); *Steed*, 752 So. 2d at 1063 (¶16).

### XI.    Whether the prosecutor engaged in prosecutorial misconduct.

¶83. Sullivan claims that prosecutorial misconduct warrants reversal. Like most of Sullivan's alleged errors, he failed to object to any perceived prosecutorial misconduct during the trial. Nor did he file any post-trial motion raising this claim. Moreover, although he cites specific instances of alleged prosecutorial misbehavior, he cites no legal authority that would support his claim that this conduct deprived him of his constitutional rights. Notwithstanding the procedural bar, Sullivan's claims are meritless.

¶84. Sullivan first says that the prosecutor concealed medical records until the trial. But medical records were discussed at a hearing held on August 31, 2017, several weeks before trial. The defense, who had been previously provided discovery, was specifically told that the medical records could not be scanned and electronically sent per HIPPA and that they were available at the prosecutor's office for review. Thus, there is no merit to Sullivan's claims that he was not provided these records before trial.

¶85. Sullivan next alleges that the prosecutor was vulgar and disrespectful during her cross-examination of him. In reviewing the pages of the transcript Sullivan cites, this Court sees no vulgarity or disrespect by the prosecutor.

¶86. Sullivan further claims that the prosecutor "showed biased intentions towards Sullivan by constant mention of rape." A review of the record shows that the only mentions of rape were (1) in reference to a rape kit having been obtained with negative findings, (2) testimony that the victim feared she had been raped, (3) comments by Sullivan himself when he testified about his interrogation, and (4) a comment made in passing during the prosecutor's closing argument when she said that stalking underage girls for sex would be statutory rape. She never accused Sullivan of such a crime. In this Court's opinion, there was no "constant mention" of rape that in any way that prejudiced Sullivan, only references consistent with the evidence.

¶87. Sullivan next claims that the prosecutor committed reversible error when she mentioned Sullivan's gang ties and selling drugs. But it was Sullivan himself who volunteered this information in his own testimony. Part of his alibi was that he was in another

38

place, drinking and selling drugs. Sullivan filed no pretrial motion to exclude this evidence and made no objection to it during his testimony. This argument is without merit.

¶88.    Sullivan faults the prosecutor for being argumentative instead of asking questions. The State admits there were two instances where objections were made to such questioning by the prosecutor. In one instance, the prosecutor commented during her questioning of Sullivan that he had been able to sit through the whole trial and fashion his testimony accordingly. The defense objected and the court implicitly sustained the objection by asking the prosecutor to rephrase the question. In the other instance, Sullivan trumped his counsel's objection by saying, "Man, let her ask her question." At no point did the defense ask for an admonishment or a limiting instruction and we do not believe either was warranted.

¶89.    Sullivan further claims misconduct based on an exchange when the prosecutor asked Sullivan if he thought everyone was lying and that there was some conspiracy against him. Sullivan replied, "What do you think?" The prosecutor replied:

> I think you did this. Exhibit 71, I think you busted [KL's] lip, right when you went through her window. I think you like hammers and I think you like little girls, and I think you did that that night.

The defense objected and the following exchanges ensued:

State:              He asked me what I thought.

THE COURT:      (Inaudible)

Defense:           Inflammatory.

THE COURT:      I'm going to--

Sullivan:          You think.

39

| | |
|---|---|
| THE COURT: | -- sustain the objection. |
| Sullivan: | You think. |
| State: | I know. |
| Sullivan: | That's the whole key thing, think. |
| Defense: | Dreshawn. |
| THE COURT: | Listen. Your lawyers are making an objection. You need to hush and let me rule on their objection. I don't even have time to rule on the objections, before you spout something out. Listen to your lawyers. Let me make the ruling. So I'm going to sustain the objection, and if you want to ask it, rephrase it. |

¶90. A prosecutor is prohibited from commenting on his or her personal beliefs about a defendant's guilt or innocence. *Robinson v. State*, 247 So. 3d 1212, 1231 (¶47) (Miss. 2018); *Mack v. State*, 650 So. 2d 1289, 1320-21 (Miss. 1994). A defendant's guilt or innocence is to be determined by a jury of his or her peers after presentation of the evidence. *Id*. In this instance, the prosecutor, in the heat of the moment, responded to Sullivan's invitation. The trial court correctly sustained the objection that the comment was out-of-bounds. In our opinion, this one comment, properly prohibited, did not sway the verdict.

¶91. To constitute a due-process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Manning v. State*, 735 So. 2d 323, 345 (¶50) (Miss.1999) (quoting *Greer v. Miller*, 483 U.S. 756, 765 (1987)). When the prosecutor's comment is improper, the test used to determine if reversal is required is "whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by

40

prejudice." *Fortenberry v. State*, 191 So. 3d 1245, 1251 (¶18) (Miss. Ct. App. 2015). In

*Graves v. State*, 216 So. 3d 1152, 1161 (¶26) (Miss. 2016), the supreme court found no error

when a district attorney referred to a defendant on trial for fondling as a "pedophile" who had

a propensity to harm other children, especially when the defense did not object. Furthermore,

the prosecutor's statements are "reviewed to see the magnitude of prejudice, the effectiveness

of the curative instruction, and the strength of the evidence of the defendant's guilt." *Holland*

*v. State*, 705 So. 2d 307, 347 (Miss. 1997).

¶92.    In this case, Sullivan failed to cite any legal authority for his claims of prosecutorial

misconduct and thus, they are procedurally barred from this Court's consideration under *Hill*

*v. State*, 215 So. 3d 581, 524 (¶10) (Miss. Ct. App. 2017). However, an examination of those

parts of the record Sullivan cites does not support any prosecutorial misconduct that warrants

reversing his conviction. Moreover, reversal is not required when a jury is properly instructed

that statements made by counsel are not evidence. *Burns v. State*, 729 So. 2d 203, 229 (¶130)

(Miss. 1998). Such an instruction was given in this case.

##        XII.    Whether Sullivan received ineffective assistance of counsel.

¶93.    To prevail on an ineffective assistance of counsel claim, a defendant must show that

his counsel made errors so serious that he or she was not functioning as the counsel

guaranteed to the defendant by the Sixth Amendment, and that the attorney's errors were so

serious as to deprive the defendant of a fair trial whose result is reliable. *Swinney v. State*,

241 So. 3d. 599, 613 (¶59) (Miss. 2018). Sullivan raises a number of instances that he claims

amount to ineffective assistance of counsel at trial. But because appellate courts are limited

41

to the trial record on direct appeal, generally ineffective-assistance-of-counsel claims are more appropriately brought during post conviction proceedings. *Pace v. State*, 242 So. 3d 107, 118 (¶28) (Miss. 2018). We believe that Sullivan's claims would be better developed through a petition for post conviction relief (PCR). Accordingly, Sullivan's claims of ineffective counsel are dismissed without prejudice to his right to raise the issue in a properly filed PCR Petition.

## CONCLUSION

¶94. Although Sullivan raises a number of alleged reversible errors, both through counsel and pro se, we find none with merit. Therefore, we affirm the convictions and the circuit court's rulings.

¶95. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**