# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00918-COA

**JEFFREY LANCE HILL A/K/A JEFFREY L. HILL A/K/A JEFF HILL A/K/A JEFFREY HILL A/K/A JEFFREY SCOTT HILL**　　　　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/2015 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN E. PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | SCOTT COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF A FIREARM ON EDUCATIONAL PROPERTY AND SENTENCED TO THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CREDIT FOR TIME SERVED, AND TO PAY A FINE OF $1,200 |
| DISPOSITION: | AFFIRMED - 04/04/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.　A jury in the Oktibbeha County Circuit Court found Jeffrey Hill guilty of possession of a firearm on educational property in violation of Mississippi Code Annotated section 97-37-17 (Rev. 2014). Hill was a student at Mississippi State University and a resident of the

Aiken Village student apartment complex at the time of the offense. He was convicted of possessing a firearm in his apartment at Aiken Village. The court sentenced Hill to three years in the custody of the Mississippi Department of Corrections (MDOC). Hill was then released immediately based on credit for time served.

¶2.     Hill's conviction follows his third trial on the charge. Hill's first trial ended in a mistrial because of a hung jury. In Hill's second trial, the jury found him guilty, but the Mississippi Supreme Court reversed the conviction after concluding that the trial court's rulings requiring appointed counsel to remain as advisory counsel despite a conflict of interest violated Hill's right to counsel. *Hill v. State*, 134 So. 3d 721, 729-30 (¶35) (Miss. 2014). On remand, Hill was tried and convicted again.

¶3.     Hill's appointed counsel in the present appeal filed a "*Lindsey* brief," certifying that she has examined the record thoroughly and identified no arguable issues to raise on appeal. *See Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). Hill subsequently filed a pro se brief alleging numerous errors. Having made our own independent and thorough review of the record, we find that Hill's arguments are without merit and that there are no other issues that warrant reversal. Accordingly, we affirm Hill's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

¶4.     Relevant facts and procedural history related to Hill's first two trials were recounted in the majority opinion and concurring opinion in Hill's prior appeal to the Mississippi Supreme Court:

> In September 2010, the Mississippi State University Police Department received a report that Hill possibly was in possession of a firearm at Aiken

2

Village Apartments on the campus of Mississippi State University. The department sent Detective Steve Westbrook and two other officers to investigate the report. When the officers arrived at Hill's apartment, Hill's roommate allowed them to enter. Once the officers were inside, Hill entered the room and spoke with the officers. Out of concern for officer safety, Westbrook asked Hill if there were any weapons in his bedroom, and Hill responded that he had a rifle in his closet. Westbrook and Hill retrieved the weapon together. Hill was then arrested for having a firearm on campus property. Hill told the officers that he had no other firearms, but that he . . . had ammunition in his vehicle.

*Hill*, 134 So. 3d at 722 (¶4).

Hill's first court-appointed attorney [(Mark Williamson)] was allowed to withdraw after Hill had filed a bar complaint and accused [Williamson] of attempting to "sabotage" his case. [Stephanie] Mallette was appointed in [Williamson's] stead, and Hill continued to file various pro se motions and letters, as he had from the beginning of the case. The first trial was set for January 31, 2012, and on January 9, 2012, [Hill] filed several documents with the circuit court, including a letter indicating that he was "firing" his attorney. In the letter, Hill made numerous accusations against Mallette, alleging, among other things, that she had filed motions on his behalf without his consent, that she had refused to interview his witnesses, and that she had allegedly accused him of murdering two men. . . . Hill wrote, "I will not be seeking another public defender. I choose to seek my own counsel."

On January 25, 2012, Mallette requested that she be allowed to withdraw and that Hill be permitted to obtain his own counsel. Her motion cited a personal conflict of interest based on the letter's accusations and Hill's having filed a complaint against her with the Mississippi Bar. The trial court granted Mallette's motion in an "Order Allowing Withdrawal." The order noted that there had been a hearing on the matter and announced that Mallette "is withdrawn from her representation of Hill." Yet, the very next sentence read, "Stephanie Mallette is hereby appointed to represent . . . Hill as standby counsel and assist him with legal and procedural matters as necessary[.]"

The order . . . granting Mallette's motion to withdraw and then appointing her as standby counsel was entered on January 31, 2012, the day of Hill's first trial . . . .

*Id.* at 728 (¶¶29-31) (Kitchens, J., concurring) (footnotes omitted).

3

¶5. Hill represented himself at his first trial, with Mallette serving as court-appointed advisory counsel. The trial ended in a mistrial because of a hung jury. Hill also represented himself, and Mallette served as advisory counsel, at his second trial in May 2012. His second trial proceeded as follows:

> There was no dispute that Hill was in possession of a World War II Era Russian Mosin Nagant rifle, in working condition, and 440 rounds of ammunition, while living at the Aiken Village Apartments. Hill's defense at trial centered completely on his belief that Aiken Village Apartments were not located on the campus of Mississippi State University (MSU).

> During its case-in-chief, the State displayed a campus map and established that Aiken Village Apartments were represented on the map. . . . Vicky Gallegos, the Housing Assignment Specialist for MSU Housing and Residence Life, [testified] that any student obtaining housing through the university must go online, access his personal student account with his student ID and password, read the housing contract and terms and conditions, then select that the terms have been read and agreed to. Further, the student is instructed to read the "Rules and Regulations" and "Prohibited Items" sections of the web page, which includes the instruction that no firearms, ammunition, and other forms of weapons are allowed on any part of the campus, including student housing. The State admitted evidence demonstrating how these rules were displayed to the student. Gallegos confirmed that Hill could not have applied for housing without reading and acknowledging these rules and that the university received electronic confirmation when Hill acknowledged the terms and regulations. She also provided that the documents explain the complete applicability of the rules to overflow housing.

> On cross-examination, Hill sought to show that he was never given a housing contract that specifically stated that Aiken Village Apartments were part of the overflow accommodations or that the apartments were owned by the university. Testimony revealed that Hill was asked by the university and consented to being moved to an overflow accommodation. Exhibits were entered into evidence indicating that Hill had signed his inventory form for Aiken Village, which displayed the university's name on the form. Also revealed was the fact that Hill's housing costs were paid from Hill's student account with the university. Photos also were introduced showing the apartment's sign including the term "University Housing."

4

Hill testified at trial to his belief that he did not live on university property by the fact that the apartments had a Starkville, Mississippi, mailing address, unlike residence halls, which have a Mississippi State, Mississippi, address, with different zip codes. Among other reasons, Hill claimed the apartments did not have the strict parking signs seen on campus, yet he had received a parking ticket for not having a parking decal. He also stated that Aiken Village appears to be outside of campus because he passed the ten-foot wall displaying "Mississippi State University" en route to the apartments, which gave him the impression that he was exiting the campus. Further, he explained that he knew firearms were prohibited on campus, so he had never before brought the rifle from his home in Arkansas until he moved into Aiken Village because of his belief that he was not on university property. Hill stated that he had obtained the rifle for hunting, but testimony from Detective Westbrook confirmed that Hill did not have a hunting license.

Also during the trial, it became known for the first time that a confidential informant originally had alerted the police about Hill's possible possession of the firearm. Once the existence of a confidential informant became known, Mallette argued to the trial court the validity of keeping the informant's identity and statement confidential. Mallette also raised the issue of a discovery violation, since the existence of the informant never before had been mentioned. The State responded that it did not have to reveal the identity of the informant, because Detective Westbrook was the eyewitness to the crime. Prior to the incident, the informant merely had reported to authorities that Hill was possibly in possession of a firearm. After much debate, the trial court ultimately ruled that no discovery violation had occurred and ordered that the police report be provided to the defense after any information regarding the identity of the informant had been redacted. The trial court ordered that a nonredacted copy would be preserved for the record under seal. The State, however, failed to properly redact a portion of the report that was given to Mallette, thereby revealing to Mallette that the informant was Hill's roommate.

Afterward, Mallette moved the trial court to allow her to withdraw from representing Hill. The trial court heard Mallette's motion in chambers, on the record. Mallette told the trial court that she could not fulfill her ethical obligation to Hill and as well as her ethical obligation to the trial court not to reveal the informant's identity as Hill's roommate. She said she would have advised Hill to call his roommate as a witness, had she been given the report before the trial began. Mallette also explained that Hill previously had consulted with her about when to rest his case, and she was concerned that if he asked her again she would have to advise him to move for a mistrial in order to call the roommate as a witness.

At that point, the trial court considered appointing new advisory counsel, and called in another public defender, Mark Williamson, to represent Hill through the end of trial. The trial court informed Williamson of the conflict that had arisen in Mallette's representation of Hill, and informed him of what his role would be as Hill's advisory counsel. Williamson informed the trial court that his first advice for Hill, as his attorney, would be to ask for a mistrial, because he could not act as Hill's advisory counsel knowing nothing about the case. The court then instructed Mallette that she would remain as advisory counsel and that she should inform Hill that, because of a conflict, she could not advise him on whether to rest his case, if he asked her that specific question.

*Id.* at 723-24 (¶¶6-12). After both sides finally rested, the jury found Hill guilty of possessing a firearm on educational property. On appeal, the Supreme Court reversed and remanded for a new trial, finding that the trial court's rulings deprived Hill of his right to conflict-free counsel. *See id.* at 726-27 (¶¶24-25).

¶6. On remand, the trial court appointed Ben Lang as Hill's new attorney. Within two months, Hill filed numerous bar complaints against Lang, as well as a pro se motion alleging ineffective assistance of counsel. Lang moved to withdraw as counsel, and the trial court granted the motion and appointed Donna Smith to represent Hill.

¶7. Smith subsequently filed a motion to withdraw as counsel for Hill. She reported that Hill refused to meet with her or discuss the facts of the case. Hill also refused to tell Smith whether he wanted her to represent him at trial or to act as advisory counsel only. Hill also filed three bar complaints against Smith and "fired" her three times. The trial court granted Smith's motion and appointed Marlin Stewart in her stead.

¶8. Hill's case proceeded to trial on May 4-5, 2015. Hill again represented himself, with

6

Stewart serving as advisory counsel.[1]  The evidence and Hill's defense were similar to the second trial, and Hill was again convicted of possessing a firearm on educational property. He was sentenced to serve three years in MDOC custody, with credit for time served, and fined $1,200.  As Hill had already served three years,[2] he was released.  Hill filed a pro se motion for judgment notwithstanding the verdict or a new trial, which was denied.

¶9.     The Indigent Appeals Division of the Office of the State Public Defender was appointed to represent Hill on appeal.  Hill's appellate counsel filed a timely notice of appeal and subsequently filed a *Lindsey* brief certifying that she had made a diligent search of the record but could not identify any arguable issues that could be presented to this Court in good faith.  Hill subsequently filed a pro se brief that purports to raise thirty-three separate issues. Hill also notes that he has filed fifteen bar complaints against his appellate counsel.  The State identifies and responds to forty-seven issues raised in Hill's pro se brief; however, the State maintains that most of Hill's claims are procedurally barred because they were not raised in the trial court and/or because Hill's pro se brief fails to provide reasons, record citations, or relevant authorities to support his arguments.

**ANALYSIS**

¶10.    We agree with the State that most of Hill's claims on appeal are procedurally barred.

---

[1] After remand and prior to the third trial, the court twice advised Hill in accordance with Rule 8.05 of the Uniform Rules of Circuit and County Court Practice and found that he was exercising his right to represent himself knowingly and voluntarily.

[2] The record is unclear as to exactly how long Hill was previously incarcerated or on parole.  An MDOC representative advised the court in open court that Hill had already served his sentence based on credit for time served.

7

The argument section of Hill's pro se brief is a disorganized series of cursory and repetitive assertions of error with few citations to the record or relevant legal authorities. Hill thus fails to comply with the requirement that assignments of error must be supported by "the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(7). Arguments that do not comply with Rule 28(a)(7) are "procedurally barred." *Cowart v. State*, 178 So. 3d 651, 666 (¶39) (Miss. 2015). "While pro se litigants are afforded some leniency, they must be held to substantially the same standards of litigation conduct as members of the bar." *Sumrell v. State*, 972 So. 2d 572, 574 (¶6) (Miss. 2008) (quotation marks omitted); *accord Thornton v. State*, 141 So. 3d 5, 12 (¶28) (Miss. Ct. App. 2014). Therefore, although we afford Hill some "leniency," our opinion will specifically address only those issues that are presented in a reasonably intelligible manner. However, pursuant to *Lindsey*, we have also "conducted an independent and thorough review of the record, and we conclude that there are no issues that warrant reversal." *Taylor v. State*, 162 So. 3d 780, 787 (¶18) (Miss. 2015).

## I.     Possession of a Firearm on "Educational Property"

¶11.    Several of Hill's claims on appeal relate to his contention that MSU did not own Aiken Village. He complains that the State failed to produce or that his attorneys failed to obtain relevant land records. He also complains that the trial court excluded unauthenticated deeds that he says prove that MSU did not own the property. He further claims that Aiken Village was not "educational property" because it was not owned by MSU and, therefore, his conviction must be reversed. The State responds that Aiken Village was "educational

8

property" within the meaning of the statute regardless of whether it was owned by MSU. The statute defines "educational property" as

> any public or private school building or bus, public or private school campus, grounds, recreational area, athletic field, or other property owned, used or operated by any local school board, school, college or university board of trustees, or directors for the administration of any public or private educational institution or during a school-related activity . . . .

Miss. Code Ann. § 97-37-17(1)(a).

¶12. The evidence at trial did not conclusively establish ownership of Aiken Village. The State's witnesses testified that it was owned by MSU and was part of MSU's campus, but no land records were introduced into evidence. Regardless, the evidence clearly established that the apartment complex was open only to MSU's students and was managed and operated by MSU's Department of Housing and Residence Life. Therefore, if nothing else, Aiken Village was "other property . . . operated" by MSU. Accordingly, Hill's arguments related to ownership are without merit, and there was sufficient evidence to convict him of unlawful possession of a firearm on educational property.

## II. The Statute's "Posting" Requirement

¶13. Mississippi Code Annotated section 97-37-17(8) provides that "[a]ll schools shall post in public view a copy of the provisions of this section." Although witnesses testified at trial that Hill received notice that firearms were prohibited on campus and in student housing, no witness had personal knowledge that a copy of 97-37-17 was posted at Aiken Village or elsewhere on campus. Hill argues that this requires reversal of his conviction. However, subsection (2) is effective regardless of whether a school complies with subsection (8). Proof

that notice was posted is not an element of the crime defined by subsection (2). Hill's argument is without merit.

### III. The Roommate

¶14. Hill makes a number of arguments related to the fact that his former roommate, Andrew Hatten, did not testify at trial. Hill raised the issue prior to trial, and the State responded that it did not know how to contact Hatten and did not intend to call him as a witness. Hill called Hatten as a witness at trial, but Hatten had not been subpoenaed and was not present. Hill argues that the State or his attorneys were obligated to locate Hatten and secure his attendance at trial and that his conviction cannot stand without Hatten's testimony. These arguments are without merit. Hill certainly had a right to subpoena "anyone he desired," but the State had no obligation to track down potential witnesses for him or provide information that it did not possess. *See Brown v. State*, 969 So. 2d 855, 862 (¶21) (Miss. 2007). Moreover, Hatten's testimony would have been of little significance to the case, and Hill suffered no prejudice from his absence. Hill admitted that he possessed a rifle in his apartment, so the only contested issue at trial was whether Aiken Village was educational property. Thus, Hill's several arguments related to Hatten are all without merit.

### IV. Alleged Fourth Amendment Violation

¶15. Hill argues that his Fourth Amendment rights were violated because university police lacked probable cause or a warrant to enter his apartment. However, the evidence showed that Hatten invited Detective Westbrook into the apartment and then, when asked, Hill told Westbrook that he had a rifle in his closet. Because Hatten consented, Westbrook's presence

10

in the common area was permissible and constitutional. *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *Loper v. State*, 330 So. 2d 265, 266-67 (Miss. 1976). Once Hill admitted to Westbrook that he had a rifle in his closet, Westbrook clearly was entitled to accompany Hill to the closet to retrieve the rifle, both for his own safety and because possession of the rifle was a crime. *See Washington v. Chrisman*, 455 U.S. 1, 6 (1982); *United States v. Roberts*, 612 F.3d 306, 310-11 (5th Cir. 2010). Accordingly, Hill's argument is without merit. There was no Fourth Amendment violation.

## CONCLUSION

¶16. We have specifically addressed those issues that Hill presented in a manner sufficient to preserve appellate review. Also, pursuant to *Lindsey*, we have independently reviewed the record and concluded that there are no issues—whether asserted by Hill or otherwise—that warrant reversal. Accordingly, we affirm Hill's conviction and sentence.

¶17. **THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF A WEAPON ON EDUCATIONAL PROPERTY AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CREDIT FOR TIME SERVED, AND TO PAY A FINE OF $1,200, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

11