# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00791-COA

**RAYMOND FRILEY A/K/A RAYMOND FRILEY, JR.**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

DATE OF JUDGMENT:            06/18/2021
TRIAL JUDGE:                 HON. TONI DEMETRESSE TERRETT
COURT FROM WHICH APPEALED:   WARREN COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                             BY: JUSTIN TAYLOR COOK
                             RAYMOND FRILEY (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: DANIELLE LOVE BURKS
DISTRICT ATTORNEY:           RICHARD EARL SMITH JR.
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 06/27/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.    Raymond Friley Jr. was charged with one count of felony child abuse under Mississippi Code Annotated section 97-5-39(2)(a)(iii) (Rev. 2014).  The indictment alleged that Friley "did intentionally strangle, choke, smother, or interfere with the breathing of [Jane], a child, less than one (1) year old."[1]  A Warren County Circuit Court jury found Friley guilty of the charge, and the trial court sentenced him to life imprisonment in the custody of

---

[1] A pseudonym has been used to protect the minor victim's identity.

the Mississippi Department of Corrections (MDOC).[2] The court denied Friley's posttrial motion.

¶2. Appealing the verdict, Friley's appellate counsel raises issues involving the trial court's admission of certain testimony and other evidence. As to these issues, we find no error and affirm the judgment. This Court permitted Friley to file a pro se supplemental "brief"[3] in which he asserts various claims of ineffective assistance of counsel against his trial and appellate attorneys. We find Friley's claims are procedurally barred because his brief does not comply with the requirements of Mississippi Rule of Appellate Procedure 28. Additionally, finding the record is not sufficient to address the claim of ineffective assistance of counsel on direct appeal, we dismiss Friley's claim without prejudice to his right to seek permission from the Mississippi Supreme Court to file a motion for post-conviction collateral relief.

**FACTS AND PROCEDURAL HISTORY**

¶3. Friley lived at his parent's home. Friley's mother Mary would occasionally babysit her great-granddaughter Jane in her home while Jane's mother, Stephanie Sanchez, was at work. In March 2017, five-month-old Jane came home from Mary's house with an

---

[2] The court also ordered Friley to pay court costs, investigative fees, and assessments and to "reimburse the county in the amount of $23,560 for attorney fees incurred on his behalf."

[3] Friley filed several pro se motions with this Court requesting that his appeal be "amended" and that he be appointed new appellate counsel. We denied Friley's request for additional counsel but afforded him an opportunity to file a pro se supplemental brief outside the briefing period. Order, *Friley v. State* (Miss. Ct. App. April 3, 2023). On April 20, 2023, Friley filed what he termed an "amendment to appeal," which we consider his supplemental brief.

unexplained rash on her face. Two years later, Jane began exhibiting strange, inappropriate behaviors, such as "put[ting] plastic [grocery] bags on her head" and tightening them. Jane would also "hump things" like plastic blow-up toys and other inflatables. Concerned, Stephanie recalled something her father had told her about Friley's past and the child's unexplained rash from 2017; so she searched Friley's room. There she discovered "every size plastic"—from "big industrial rolls rolled up" to "sheet plastic, bubble wrap, ziplock bags in sizes [she'd] never seen before." Stephanie also found plastic "floaties" and children's toys. She tried to access Friley's laptop computer, but it was password-protected. Stephanie did not tell anyone of her suspicions at that time, but she stopped sending Jane to Mary's house.

¶4. In June 2019, Stephanie went to Mary's to visit her dying grandfather, but neither he nor Friley were home at the time. Stephanie went to use Friley's bathroom and noticed that his laptop was open and unlocked. She looked through files on his computer "because [she] thought that would probably be [her] only chance to." On Friley's laptop, Stephanie discovered pictures and videos of Jane from 2017. These photos showed Jane as a baby in Friley's bed with an oxygen or nebulizer-type mask on her face, Jane with oxygen tubing in her nose and mouth, and Jane crying while zipped up in a plastic comforter-type bag. In one video, Jane, who had no medical reason to need oxygen or breathing treatments, had tubing in her nose. Another video showed Jane with a ziplock bag tied off to her head with no air in it, and she appeared to be unconscious. Stephanie recorded these photos and videos with her cell phone.

3

¶5.     Extremely upset, Stephanie immediately told Mary and her stepmother what she had found, and she contacted the Warren County Sheriff's Department. A search warrant was executed, and law enforcement collected numerous plastic and electronic items from Friley's room. These items included: comforter bags, ziplock bags, baby's plastic jackets, breathing machines, a USB drive, a Nikon camera, a laptop computer, and a piece of paper containing a "[s]exual fantasy" story involving forcible use of plastic. Friley's laptop and the USB drive were analyzed by the Mississippi Attorney General's Office. On the USB drive, the Attorney General's office recovered videos and images of Jane, as well as hundreds of stock photos of persons with clear tubing and breathing masks on their faces.

¶6.     Friley was arrested and charged with felony child abuse. A jury trial was held June 14-16, 2021. Stephanie testified to the events leading up to Friley's arrest as stated above. She further noted that Friley had treated her daughter differently from other kids in the family, buying her "special things." The photos and video that Stephanie recorded on her phone from Friley's laptop were introduced into evidence.

¶7.     Wendy Staggs, Friley's sister and Stephanie's stepmother, testified that Friley "didn't want anyone in his room at all." She said that Stephanie called her in June 2019, "hysterical, crying." Stephanie told Wendy that "[s]he found pictures of [Jane] in plastic bags" on Friley's computer. Wendy identified the photos of Jane from Stephanie's phone that Stephanie had shown her.

¶8.     Detective Sam Winchester testified that he received a phone call on June 7, 2019, "concerning possible abuse . . . [o]f a child." He executed the search warrant on Friley's

4

room, and law enforcement seized Friley's computer, cell phone, a "jump drive," and camera, as well as plastic toys and "children's underwear." Law enforcement also recovered an oxygen mask and tubing similar to those depicted in the photos of Jane.

¶9. Investigator Todd Dykes assisted in collecting the evidence from Friley's room. The investigator worked with the Attorney General's (AG) task force on crimes against children, and he sent Friley's laptop to the AG's "Cyber Crime" unit for forensics. Investigator Dykes also testified that Friley had "a previous conviction for molestation," which was "kind of similar" to the present case because the young female who had been attacked "said that a pool toy and a plastic bag were placed over her face while he assaulted her."

¶10. Friley's mother, Mary, testified that Friley did not want people in his room and had tried to put a lock on his door, but she did not allow him to use it. She recalled discussing Jane's previous facial rash with Stephanie and Wendy in 2017. When Mary saw the photos Stephanie recorded, she told Stephanie to "go straight to the detective at the Sheriff Office and press charges." On cross-examination, Mary said that her husband had a C-pap machine with a portable oxygen tank, but she clarified that Friley had no need for oxygen and that she had never seen him wearing any oxygen mask or tubing.

¶11. Ashley Boldig, an investigator for the AG's office, was admitted as an expert in computer forensics. She testified that there were images of Jane on Friley's computer. Investigator Boldig also discovered hundreds of stock images of children wearing "breathing masks or the clear tubing on their faces." Some of the photos were "unallocated" (deleted). She noted that Friley's internet browser history showed that he had searched the "Mississippi Criminal Code" on Justia Law for child pornography and child abuse statutes and penalties.

5

Friley's search engine activity included searches for "Plastic Smother Girl, Plastic Bubble Girl, Plastic Suffercation [sic] Warning, and Plastic Bag Child." Further, his YouTube searches included "Trash Bag Girl, Garbage Bag Girl, Sex in a Garbage Bag, Girl in Trash Bag, Getting Tired in a Garbage Bag, and the Trash Bag Challenge." Investigator Boldig testified that there was access to a Yahoo email address entitled "Clear Plastic Oxygen Mask at Yahoo Dot Com" and "access to Outlook Mail for Raymond Friley."

¶12. Lastly, the State offered testimony from "Christy,"[4] who said Friley sexually assaulted her in 1999 when she was around eight or nine years old. Christy stated that Friley was working on her grandmother's pool and came into the pool house while Christy was in the shower. Friley put a pool float and a blown-up ziplock bag against her face and then sexually assaulted her, digitally.[5]

¶13. The State rested, and the trial court denied the defense's motion for a directed verdict. The court also denied with prejudice a separate pro se motion to dismiss that Friley had insisted his attorney file on his behalf on the second day of trial. Friley was convicted and sentenced to a term of life imprisonment in the custody of the MDOC.

**DISCUSSION**

I.     **Whether the trial court erred in allowing testimony about prior bad acts.**

¶14. Before trial, the defense filed a motion to exclude evidence of Friley's prior

---

[4] Since the witness was a minor at the time of the incident, a pseudonym has been used.

[5] Friley was convicted of molestation in 2000 and sentenced to a term of fifteen years in MDOC custody.

6

conviction from 2000. The trial court denied the motion, finding that the evidence was admissible to show pattern and motive. Friley's former victim Christy testified that Friley had cornered her in the shower with a pool float and then placed a ziplock bag over her face while sexually assaulting her.

¶15. Friley contends that it was reversible error for the State "to impermissibly insert sexual violence into the case" because "there was no allegation that Friley sexually assaulted Jane—the sole allegation was physical abuse." Alternatively, Friley asserts that Christy's testimony should have been limited only to Friley's putting a pool float over her face, not the sexual assault.

¶16. We review a trial judge's decision to admit or exclude evidence under an abuse-of-discretion standard. *Pustay v. State*, 221 So. 3d 320, 345 (¶68) (Miss. Ct. App. 2016) (citing *Hargett v. State*, 62 So. 3d 950, 952 (¶7) (Miss. 2011)). That being said, "[a] trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence." *Roberson v. State*, 287 So. 3d 219, 233 (¶37) (Miss. Ct. App. 2017). Unless the trial judge abuses this discretion, resulting in prejudice to the defendant, we will not reverse the judge's evidentiary ruling. *Id*. (citing *Gore v. State*, 37 So. 3d 1178, 1183 (¶13) (Miss. 2010)).

¶17. "Rule 404(b)(1) of the Mississippi Rules of Evidence prohibits the use of prior-bad-acts evidence to prove a person's character to show that he acted in conformity therewith." *Smith v. State*, 326 So. 3d 510, 517 (¶20) (Miss. Ct. App. 2021). "But Rule 404(b) evidence may be used for another purpose, such as to show 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id*. at 517-18 (¶20) (quoting MRE 404(b)(2)). In determining whether the prior-bad-acts

evidence is admissible, "a trial judge should filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative value" is substantially outweighed by the danger of unfair prejudice. *Id*. at 518 (¶20).

¶18. Friley argues that the evidence of this prior bad act does "not meet any of the accepted uses for 404(b) evidence." We disagree. As the State argued at trial, it does not "get any more similar than when a man puts a bag over someone's head and is convicted of it and then 15 to 20 years later does the exact same thing."[6] This evidence was introduced to show that Friley had an unusual attraction to using plastic materials on children, which was relevant to the charges of felony child abuse in this case. *See, e.g.*, *McKinley v. State*, 238 P.3d 837, 2008 WL 6085816, at *1 (Nev. 2008) (order) (finding trial court did not err in ruling defendant's "fetish for bondage was relevant to [his] motive for sexual gratification for bondage, which may have caused [him] to tie up and gag the victim without her consent"). Here, we find no abuse of discretion in the trial court's ruling to allow this testimony, as the probative value of establishing Friley's intent, lack of mistake, and motive was not substantially outweighed by any danger of unfair prejudice.

> II. **Whether the trial court erred in allowing cumulative, overly-prejudicial, and irrelevant evidence obtained from Friley's computer.**

¶19. Friley's defense counsel moved to exclude any evidence of "internet searches and/or results" and the photos found on Friley's computer that did not involve the victim. Defense counsel argued that the internet searches and photos retrieved were cumulative and not

---

[6] The trial court did exclude any reference to the fact Friley was a registered sex offender.

relevant. Noting Friley's "saying he ha[d] been set[]up," the State responded that the evidence was relevant to refute that defense. The trial court agreed and overruled the defense's motions. Investigator Boldig testified as to the internet search terms on Friley's computer (e.g., "Plastic Smother Girl" and " Plastic Bubble Girl"). Several hundred photos were also introduced into evidence showing persons wearing tubing and breathing masks on their faces.

¶20. Friley contends that this "voluminous irrelevant evidence serve[d] no purpose other than to inflame the passions of the jury," allowing them "to consider Friley's proclivities rather than his actions in this case." *See Wade v. State*, 583 So. 2d 965, 967 (Miss. 1991) (finding trial court erred in allowing evidence of sexually explicit photos not viewed by the victims because they had no "probative value" and were prejudicial to the defendant). Although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403.

¶21. Nevertheless, as stated, trial judges are afforded "a great deal of discretion as to the relevancy and admissibility of evidence." *Roberson*, 287 So. 3d at 233 (¶37). "With respect to the admissibility of photographic evidence, 'some probative value is the only requirement needed.'" *Sims v. State*, 347 So. 3d 222, 230 (¶33) (Miss. Ct. App. 2022) (quoting *Morrison v. State*, 332 So. 3d 396, 402 (¶27) (Miss. Ct. App. 2022)). "[E]ven if the photograph is . . . unpleasant, or even inflammatory, it still may be admitted so long as it has probative value and its introduction serves a meaningful evidentiary purpose." *Id*. (quoting *Morrison*, 332

9

So. 3d at 402 (¶27)).

¶22. We find no abuse of discretion in the trial court's ruling to allow the evidence of Friley's computer searches and stock photos depicting persons wearing plastic. As the State argued, the evidence was "relevant to show that Friley knowingly, intentionally, or recklessly put otherwise innocuous plastic items in Jane's mouth, nose, and around her head for the very specific purpose of interfering with her breathing." This evidence demonstrated Friley's motive, i.e., his unusual attraction to using plastic materials on children, and his lack of accident and intent. As such, we find it falls squarely under the exceptions listed in Rule 404(b)(2).

### III. Whether Friley was subject to ineffective assistance of counsel.

¶23. Friley alleges in his pro se "amendment to appeal" brief that his appointed trial and appellate counsel were ineffective, listing more than sixty claims of error to support this issue. Many of these grounds consist of Friley's complaint that trial counsel refused to bring certain things to the trial court's attention, make certain objections, or call certain witnesses.[7] He also complains that appellate counsel failed to raise these grounds on appeal.

¶24. We find Friley's claims are procedurally barred because his pro se brief does not conform to the requirements of Mississippi Rule of Appellate Procedure 28. Specifically,

_____

[7] Some of these alleged errors were also raised in Friley's pro se motion to dismiss below (e.g., that Stephanie filed a false report, that law enforcement committed burglary of his residence, and that the search warrant was not properly filled out). Although defense counsel felt "there was not true basis in the law to file" his motion to dismiss, she filed the motion "out of the abundance of caution to make the record complete." The trial court denied Friley's motion, finding the allegations of errors he raised were not "relevant . . . based on the testimony that has been given."

10

Friley's brief does not include a certificate of interested persons; the style of the case; a table of contents; any table of cases, statutes, or other authorities; a separate statement of the issues; a statement of the case; or a statement of the argument. *See* M.R.A.P. 28(a)(1)-(6). The failure to list a statement of the issues on its own bars his claims from appellate review. *See Smith v. State*, 118 So. 3d 180, 182 (¶5) (Miss. Ct. App. 2013) (holding that "[w]hile [the appellant's] brief contain[ed] a multitude of vague mentions of constitutional breaches," his failure to abide by Rule 28's requirement that "each issue be separately numbered in a statement of the issues . . . bars our consideration of the issue").

¶25. Mississippi Rule of Appellate Procedure 28(a)(7) also requires that the argument section of an appellant's brief "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." For the majority of the claims, Friley cites no legal authority in support of his arguments. "The appellant 'has a duty to make more than mere assertions and should set forth reasons for his arguments and cite authorities in their support.'" *Bridges v. State*, 349 So. 3d 181, 186 (¶14) (Miss. Ct. App. 2022) (quoting *Brown v. State*, 211 So. 3d 709, 712 (¶8) (Miss. Ct. App. 2016)). The "[f]ailure to cite any authority is a procedural bar, and we are under no obligation to consider the assignment." *Borsi v. State*, 339 So. 3d 191, 198 (¶16) (Miss. Ct. App. 2022) (quoting *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶4) (Miss. Ct. App. 2005)); *see also Glasper v. State*, 914 So. 2d 708, 726 (¶40) (Miss. 2005) (holding a defendant's failure to cite "a single case to support his specific claims of ineffectiveness of his trial counsel" barred the issue from appellate review). As for the

remaining claims, Friley has failed to cite any meaningful or relevant authority.[8] Rule 28(a)(7) "does not simply require a party to *mention* authority; the authority must be used to develop the argument in a meaningful way." *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016) (emphasis added). "In the absence of meaningful argument and citation of authority, this Court generally will not consider the assignment of error." *Randolph v. State*, 852 So. 2d 547, 558 (¶29) (Miss. 2002). Friley's brief also fails to provide citations to the record (except for portions of the trial transcript). *See Rowlett v. State*, 791 So. 2d 319, 324 (¶13) (Miss. Ct. App. 2001) (noting a litigant's duty "to cite the Court to specific places in the record where the events occurred that he would now contend constitutes reversible error") (citing M.R.A.P. 28(a)(6)).

¶26.    Procedural bar notwithstanding, claims of ineffective assistance of counsel generally will not be addressed on direct appeal unless "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Hinton v. State*, 311 So. 3d 1213, 1215 (¶9) (Miss. Ct. App. 2020). Rather, ineffective-assistance of counsel claims are "more appropriately brought during post-conviction proceedings" because our appellate courts are limited on direct appeal

---

[8] Friley acknowledges this failure, explaining that he was "unable to include any laws, cases and/or statutes because [he is] not lawyer" and does not have the ability "to look up cases." However, Friley's status as a pro se litigant does not excuse his lack of any attempt to comply with the requirements of Rule 28. "While pro se litigants are afforded some leniency, they must be held to substantially the same standards of litigation conduct as members of the bar." *Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017) (quoting *Sumrell v. State*, 972 So. 2d 572, 574 (¶6) (Miss. 2008)).

"to the trial court record in [our] review of the claim." *Eubanks v. State*, 341 So. 3d 896, 908 (¶34) (Miss. 2022). We "may, however, address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record." *Id*. Here, the State has expressly refused to "stipulate that the record is adequate for this Court to review Friley's ineffective-assistance claims." We further find many of Friley's allegations of ineffective assistance are not "based on facts fully apparent from the record" and thus cannot be addressed on direct appeal.[9] We therefore decline to review Friley's claim.

## CONCLUSION

¶27. With regard to the evidentiary issues raised by Friley's appellate counsel, we find no error and affirm the judgment of conviction. We dismiss Friley's pro se claim of ineffective assistance without prejudice. If he so chooses, Friley may raise these issues in a properly filed motion for post-conviction relief, provided he first obtains permission from the Mississippi Supreme Court. *See* Miss. Code Ann. § 99-39-7 (Rev. 2020).

¶28. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**

---

[9] For example, Friley alleges that: (1) the court reporter from his previous trial in 2000 "deliberately and intentionally" changed the trial transcript; (2) he "was not allowed to be present during the jury instruction conference"; (3) the prosecutor committed perjury and tampered with the jury; (4) his constitutional rights were violated after previously-appointed counsel quit without telling him; (5) Stephanie and Detective Winchester committed perjury; (6) he failed to receive a copy of the search warrant; and (7) he was not convicted of a jury of his peers because all but one of the jurors were strangers. Friley also initially claims his counsel raised no objections at trial, but he later contradictorily states that the court erred in failing "to sustain my attorney's objection."