# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00807-COA

**MARCUS LEEALAN FIELDS A/K/A MARCUS FIELDS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2024 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: AMBER LAUREN STEWART |
| | MARCUS FIELDS (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | MATTHEW BARTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/21/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ.**

**LASSITTER ST. PÉ, J., FOR THE COURT:**

¶1. Marcus Fields was convicted of one count of armed robbery and one count of aggravated assault. He was sentenced to serve thirty years for the armed robbery conviction and twenty years for the aggravated assault conviction, with the sentences to run concurrently. Fields was also ordered to serve five years of post-release supervision for the armed robbery conviction.

¶2. Fields appealed his conviction, but we find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     Tewonnia Epps worked at the Money Center at Walmart in Horn Lake. One day, a man wearing a face mask and hat approached the counter and handed Epps a check for $10,000. Epps returned the check to the man and told him that she could not cash such a large amount. The man flipped the check over and handed it back to her, which is when she saw the message written on the back: "Don't make me kill you. Give me all the money."

¶4.     Epps "started to panic," but she tried to open the cash drawer. As she struggled to open it, the man showed her a gun. She unlocked the drawer, set it on the counter, and walked away as the man grabbed the money.

¶5.     Epps testified at trial that she could not identify the man because he had been wearing a mask. She had noticed that the man left a debit card behind on the counter, but she had not seen him with the card during the robbery.

¶6.     Darrell Capley was also working at Walmart the day of the robbery. He heard a "commotion" from the Money Center and started in that direction. He saw a man running from the Money Center, and he tried to get the man to slow down so he would not run into any customers. Capley testified that he did not consider the possibility of a robbery; he was only thinking of customer safety. Capley testified that the man did not slow down and that he "certainly wasn't trying to avoid me. . . . [The man] just kind of pile-drived right through me." Capley was knocked to the ground. He suffered a one-inch gash on the back of his head and broke a bone behind his kneecap, which later required a surgery to install a plate and screws.

¶7.     Law enforcement responded to the 911 call from Walmart. When Officer Martin Gill

arrived, he found Capley bleeding on the ground. Capley told Officer Gill that he had heard some screaming from the Money Center, and as he started walking that way, a "black male wearing a plaid-colored shirt, blue jeans and a hat, with a gun" came running towards him. Officer Gill noticed a $20 bill and a black and silver gun on the ground near Capley. Other officers found the check in the Money Center made out to John Smith for $10,000, with a handwritten note on the back that read, "Please do not make me kill you. Give me all the money." Officers also found a debit card with Fields's name on it sitting on the Money Center counter. Officer Justin Stout subpoenaed the account records associated with Fields's debit card and learned the social security number, phone number, email address, and mailing address associated with the card. Officer Stout later confirmed that the information he had received in response to the subpoena matched the known information for Fields.

¶8.     Officer Stout retrieved Walmart's security footage of the robbery. Officer Stout watched the man, now suspected to be Fields, run through the parking lot and get into "a black Pontiac-style vehicle" with damage to its front end. Officer Stout ran the license plate number for the black Pontiac and discovered that it was registered to Fields.

¶9.     Officer Stout interviewed Fields, who acknowledged and waived his *Miranda*[1] rights. Fields told Officer Stout that the gun found at Walmart belonged to him, but he said that he had given it to his uncle, Cornelius. Fields also admitted that he owned a black Pontiac, but he said that he often let friends borrow it. Fields explained to Officer Stout that he was having some money troubles and was worried about losing his home. Fields said that he had

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

let Cornelius borrow the gun and suggested that Cornelius and an unnamed friend had committed the robbery to help him out. Fields admitted that he had gotten a couple of thousand dollars from the robbery, but he denied being present.

¶10. Officer Stout could not find any person named Cornelius Fields. Officer Stout found a man named Cornelius in the area, but Fields denied that it was his uncle. Fields could not give Officer Stout any other identifying information for Cornelius or the unnamed friend who may have borrowed his car.

¶11. During his testimony, Officer Stout stated that Fields had used his left hand to sign his *Miranda* waiver, and Officer Stout asserted that the man in the Walmart surveillance video also appeared to be left-hand dominant. Officer Stout noted that when he was interviewed, Fields was wearing a gold watch and had some facial hair on his chin, and the robber also had these characteristics.

¶12. Fields elected not to testify, and the defense rested. The jury found Fields guilty of armed robbery and aggravated assault. The DeSoto County Circuit Court sentenced Fields to thirty-five years in the custody of the Mississippi Department of Corrections, with thirty years to serve followed by five years of post-release supervision for armed robbery and to twenty years for aggravated assault, to be served concurrently.

## ANALYSIS

¶13. At the outset, we must explain the briefing history of this case. After the case was assigned to this Court, Fields filed a pro se brief that raised four issues. Fields's appointed appellate counsel filed a brief raising two issues. The State then filed the appellee's brief and

4

addressed only the arguments raised by Fields's counsel—not responding at all to Fields's pro se brief, which had been filed before Fields's counsel filed the appellant's brief.

¶14.    Fields's appointed appellate counsel did not reply to the appellee's brief, but Fields did, filing a reply brief that raised new arguments and echoed some that had already been raised.[2] The State then filed a supplemental appellee's brief responding to Fields's reply brief.[3] Finally, Fields filed a "pro se supplemental brief" on July 29, 2025.

¶15.    "While pro se litigants are afforded some leniency, they must be held to substantially the same standards of litigation conduct as members of the bar." *Friley v. State*, 366 So. 3d 959, 967 n.8 (Miss. Ct. App. 2023) (quoting *Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017)). Fields's final brief is not allowed under the Rules of Appellate Procedure and is hereby stricken. The new arguments raised in his reply brief are procedurally barred, and we will not address them.[4] Thus, the issues properly before us are those raised in Fields's pro se appellant's brief and in the appellant's brief filed by counsel. Those issues are: (1) whether the circuit court should have granted a continuance after appointing Fields new trial counsel; (2) whether Fields received ineffective assistance of counsel; (3) whether Fields's due process rights and Fourth Amendment rights were violated; (4) whether the trial court should have granted a mistrial; (5) whether the trial court committed plain error in allowing

---

[2] In his reply brief, Fields argued that the trial court erred by allowing hearsay and by denying his motion for a directed verdict because the evidence was insufficient. Fields also raised new arguments about his counsel's alleged ineffectiveness.

[3] *See* M.R.A.P. 28(b).

[4] *Nelson v. State*, 69 So. 3d 50, 52 (¶8) (Miss. Ct. App. 2011).

improper lay opinion testimony; and (6) whether the lay opinion testimony was more prejudicial than probative. We find no error and affirm.

## I. Whether the circuit court erred by denying a continuance.

¶16. Fields argues that the circuit court erred by not allowing a continuance once his appointed counsel was assigned his case. He argues that this short time frame resulted in his counsel's ineffectiveness, addressed *infra*, and that there should have been a continuance granted. However, neither Fields nor his counsel moved for a continuance. We will not review issues not presented to the trial court. *Smith v. State*, 398 So. 3d 875, 891 (¶30) (Miss. Ct. App. 2023).

## II. Whether Fields received ineffective assistance of counsel.

¶17. Fields argues that his trial counsel was constitutionally deficient and that these deficiencies prejudiced his defense at trial. Specifically, Fields argues that his counsel (1) failed to prepare and investigate; (2) failed to select impartial jurors; (3) failed to object to statements made by witnesses and the prosecution; (4) failed to request a continuance; and (5) failed to move for a mistrial during Officer Stout's testimony.[5]

¶18. "Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings. This is because during direct appeals[,] the Court is

---

[5] As noted, Fields filed a pro se reply brief, and he raised additional ineffective assistance of counsel claims in that brief. Some issues raised in his reply brief expand upon the issues noted here; others are new entirely. In his reply brief, Fields argued that his counsel failed to object to prosecutorial misconduct, failed to object to Stout's lay opinion testimony, failed to demand a mistrial, failed to show that law enforcement's investigation was incomplete, failed to challenge Fields's arrest warrant and unlawful search, and failed to introduce various pieces of evidence.

limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Gowdy v. State*, 56 So. 3d 540, 543 (¶7) (Miss. 2010). This Court has stated:

> This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed. We may also address such claims on direct appeal when the record affirmatively shows that the claims are without merit. If the record on direct appeal is insufficient to address a defendant's ineffective assistance claims, we will dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief.

*Gregg v. State*, 372 So. 3d 132, 137 (¶13) (Miss. Ct. App. 2023) (citations and internal quotation marks omitted).

¶19. Our review of the record and Fields's claims of ineffective assistance shows no affirmative "ineffectiveness of constitutional dimensions," nor have the parties stipulated the record is adequate to address Fields's claims.[6] We therefore decline to address the issues on direct appeal and dismiss without prejudice Fields's claims of ineffective assistance so that he may raise them in a properly filed motion for post-conviction collateral relief, should he choose to do so.

### III. Whether Fields's Fourth Amendment and due process rights were violated.

¶20. Fields argues that he was arrested without a warrant and that the searches of his

---

[6] Indeed, the State did not respond to the ineffective-assistance claims raised in Fields's pro se brief, and the supplemental appellee's brief responding to Fields's pro se reply brief is not authorized by the Rules of Appellate Procedure.

person, home, and car were also unlawful. Fields also asserts that he was never shown his warrants and that this was also a violation of his due process rights. He argues that as a result, his statement to Officer Stout should have been suppressed.

¶21. None of these claims were made to the circuit court, and our review of the record reveals no motion in limine or motion to exclude. We will not find the circuit court in error for something it was not asked to do. *McVay v. State*, 385 So. 3d 1280, 1292 (¶30) (Miss. Ct. App. 2024). Fields's failure to raise the issue to the circuit court prohibits him from challenging it on appeal. *Id.*

### IV. Whether the circuit court should have granted a mistrial.

¶22. Fields argues that the circuit court should have granted a mistrial during Officer Stout's testimony because, according to Fields, Officer Stout's testimony contained hearsay and was more prejudicial than probative. MRE 802, 403. However, like other issues raised by Fields, there was no objection to this testimony, and the argument was waived. *McVay*, 385 So. 3d at 1292 (¶30).

¶23. Fields's arguments are also without merit. None of the testimony noted by Fields reveals hearsay. Fields's Rule 403 argument is more of a weight-of-the-evidence argument: he argues that no other evidence supported Officer Stout's testimony and that the State's case was circumstantial.[7]

### V. Whether the circuit court committed plain error by allowing

---

[7] We decline to address Fields's passing assertions that the jury's verdict was against the weight of the evidence or that the evidence was insufficient, as these issues were not appropriately raised and briefed. *See* M.R.A.P. 28(a)(3), (7); *Reed v. State*, 987 So. 2d 1054, 1056 (¶¶7-8) (Miss. Ct. App. 2008).

**Officer Stout's lay testimony.**

¶24.    Through his appointed appellate counsel, Fields argues that Officer Stout offered "improper lay opinion testimony" regarding Fields's facial hair, gold watch, and use of his left hand. Fields asks us to review this issue for plain error, as he acknowledges that there was no objection to Officer Stout's testimony.

¶25.    For the plain error doctrine to apply, there must be an "obvious instance[] of injustice or misapplied law." *Bowdry v. State*, 158 So. 3d 354, 356 (¶6) (Miss. Ct. App. 2014). To determine if plain error occurred, this Court "must determine if the trial court has deviated from a legal rule" and "whether that error is plain, clear, or obvious." *Green v. State*, 183 So. 3d 28, 31 (¶6) (Miss. 2016).

¶26.    Fields argues that Officer Stout's testimony was improper lay testimony under Rule of Evidence 701 because he did not have "sufficient familiarity" with Fields to identify him in a way that was helpful to the jury. Officer Stout testified,

> [T]he individual that committed the robbery was left-hand dominant. During the interview, everything was signed, dated with Marcus Fields's left hand . . . . [T]he suspect was observed having a gold watch on his left hand as well as having a—some chin facial hair that was protruding from . . . underneath the mask, kind of outwards. And during [his] interview with Mr. Marcus Fields, he had a watch, he had that same goatee as well or facial hair.

¶27.    Mississippi Rule of Evidence 701 allows lay opinion testimony if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Officer Stout's testimony was rationally based on his perception of Fields during their interview and was not based on any scientific, technical, or other

9

specialized knowledge.

¶28.    Fields argues that the testimony was not helpful to the jury in determining the identity of the robber because Officer Stout was not sufficiently familiar with him (Fields). But this Court and the Supreme Court have held that this "sort of lay opinion evidence that can prove helpful to the jury" because "the video was neither 'so unmistakably clear' that no identification testimony was needed nor 'so hopelessly obscured, that the witness is no better suited than the jury to draw a meaningful conclusion as to the identity of the person depicted.'" *Lenoir v. State*, 222 So. 3d 273, 277 (¶15) (Miss. 2017) (quoting *Bennett v. State*, 757 So. 2d 1074, 1076 (¶7) (Miss. Ct. App. 2000)).

¶29.    At no point did Officer Stout testify that the man in the Walmart surveillance video *was* Fields. He testified that the man in the video and the man Officer Stout interviewed had several things in common, including a gold watch, use of his left hand, and facial hair on his chin. This was helpful to the jury in determining the identity of the robber. The jurors could watch the surveillance video and reach their own conclusion about the identity of the robber.

¶30.    Additionally, Officer Stout's evidence was helpful in understanding his testimony—a large part of Fields's cross-examination of Officer Stout was dedicated to questioning why Officer Stout was convinced Fields was the robber and had not spent more time looking for other suspects. Given the similarities between the man in the surveillance video and the man Officer Stout interviewed, Officer Stout believed that the two men were the same person.

¶31.    Given this, there was no obvious or clear error in allowing Officer Stout to testify about his perception of Fields and the man shown in the surveillance video.

## VI.   Whether Officer Stout's testimony was more prejudicial than probative.

¶32.   Fields argues through his appellate counsel that Officer Stout's testimony was more prejudicial than probative because it was not reliable and the alleged misidentification was the only thing placing Fields at the scene of the robbery. *See* MRE 403. This argument was not raised at trial and can be reviewed only for plain error. However, as stated, Officer Stout did not conclusively identify the man in the video as Fields. Additionally, other evidence connected Fields to the crime—including the debit card bearing his name that was left on the counter during the robbery. Fields also admitted that his gun and his car were used in the robbery, and he admitted that he received money from the robbery. Given this evidence, we cannot say that Officer Stout's testimony was more prejudicial than probative, and there was no plain error in allowing it.

## CONCLUSION

¶33.   Fields's convictions and sentences for armed robbery and aggravated assault are affirmed. The issues properly raised in his pro se appellant's brief and the appellant's brief filed by counsel either lack merit, are waived for failure to properly preserve the issue, or are dismissed without prejudice. Other issues raised for the first time in Fields's reply brief or his July 29 pro se supplemental brief are procedurally barred and not addressed.

¶34.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.**

11